George P. BAKER et al., Trustees of the Property of Penn Central Transportation Company, Plaintiffs-Appellees.

v.

NATIONAL CITY BANK OF CLEVELAND, Defendant-Appellant.

No. 74–1908.

United States Court of Appeals, Sixth Circuit.

Feb. 13, 1975.

Frank C. Heath, John L. Stauch, Jones, Day, Cockley & Reavis, Cleveland, Ohio, for defendant-appellant.

Thomas R. Skulina, Cleveland, Ohio, Marvin Comisky, Goncer M. Krestal, Philadelphia, Pa., for plaintiffs-appellees.

Before MILLER and LIVELY, Circuit Judges, and McALLISTER, Senior Circuit Judge.

LIVELY, Circuit Judge.

This appeal presents a single question: What requirements must a bank meet in order to effect a non-judicial setoff against the account of a customer? The facts are not in dispute and are stated in the comprehensive memorandum and order entered in the district court by Judge William K. Thomas. Baker, et al., Trustees v. National City Bank of Cleveland, 387 F.Supp. 1137 (N.D.Ohio 1974). The District Judge concluded that a non-judicial setoff is effected only when intent to set off is accompanied by some act of consummation and evidence of the consummated setoff in bank records. *Id.* at 1149. Upon a finding that National City Bank (NCB) had done no more on June 20, 1970 than declare an intention to set off the checking account of Penn Central against its demand note to the bank, the district court held that the Penn Central account was subject to a prohibition against setoff contained in Order No. 1 of the Penn Central reorganization proceedings issued on June 21, 1970. We affirm.

No cases have been cited, and we have found none, which state explicitly the steps which a bank is required to take in order to effectuate a setoff. The appellant argues here, as it did in the district court, that under controlling Ohio law a setoff is effective at the time a bank declares a setoff, and that bookkeeping entries are not required to accomplish the act. The cases cited in appellant's briefs do not hold this. On the other hand, there is language in the cited opinions which indicates that each bank took some overt step to consummate the act of setting off. In Bank of Marysville v. Windisch-muhlhauser Brewing Co., 50

O.St. 151, 33 N.E. 1054 (1893), the court stated that the bank had "applied" the depositor's account to his debt prior to presentation of a check which was dishonored. *Id.* at 159, 33 N.E. 1054. In State ex rel. Warrensville Heights v. Fulton, 128 O.St. 192, 200, 190 N.E. 383, 386 (1934), in discussing a setoff, the Supreme Court of Ohio stated that ". . . the trust company was entitled *to apply* the deposit of relator in part satisfaction of the past-due obligations which the relator owed it." (emphasis added). In referring to the right of setoff, the Supreme Court of the United States has written—

> But, broadly speaking, it represents the right which one party has against another to use his claim in full or partial satisfaction of what he owes to the other. That right is constantly exercised by business men *in making book entries* whereby one mutual debt *is applied* against another. Studley v. Boylston Bank, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913) (emphasis added).

Language indicating that a setoff is accomplished by some affirmative act which provides record evidence of the transaction is used throughout the *Boylston Bank* opinion.

Appellant relies on Ohio Revised Code § 2309.19, which reads as follows:

> When cross demands have existed between persons under such circumstances that if one had brought an action against the other a counterclaim could have been set up, neither can be deprived by the benefit thereof by assignment by the other, or by his death. The two demands must be deemed compensated so far as they equal each other.

This statute merely provides that a right to set off is not defeated by an assignment or by death of one of the parties to the debtor-creditor relationship. The section declares an automatic setoff upon death or assignment by providing that the two demands shall be "deemed compensated." It does not deal with the

**1018**

mechanics of effecting a setoff in other circumstances.[1]

■ Noting that Pennsylvania has a defalcation statute similar to that of Ohio, appellant has cited a number of cases from that jurisdiction. While it is true that several of these opinions state it is not necessary that there be book entries *before* a bank may claim a setoff, nevertheless in each case it is clear that the bank performed some overt act to carry out its intent to set off. Goldstein v. Jefferson Title & Trust Co., 95 Pa.Super. 167 (1928); Aarons v. Public Service Building & Loan Association, 318 Pa. 113, 178 A. 141 (1935); Duffy v. Fifty-Eighth & Chester Ave. Building & Loan Association, 325 Pa. 127, 189 A. 307 (1937). In each opinion, the court speaks of the bank's "exercising" its right of setoff. This implies something more than a declaration of intent. In *Goldstein, supra,* the court held that the bank's refusal to pay its depositor's check was "sufficient evidence of intention." We do not read Judge Thomas' opinion to require that the bank *"first"* make book entries charging one account and crediting the other *before* asserting its right to priority, the sequence which the Pennsylvania Supreme Court held was not required in *Aarons, supra.* Book entries may be the last step, rather than the first, but the act of setoff is not complete until three steps have been taken: (1) the decision to exercise the right, (2) some action which accomplishes the setoff and (3) some record which evidences that the right of setoff has been exercised.

The Uniform Commercial Code, § 4–303, which was in effect in Ohio in June 1970, deals with the right of setoff. Ohio Revised Code § 1304.23. This section, *inter alia,* determines the time at which items become subject to setoff by a bank. The scheme of § 1304.23 is to provide a series of "milestones," all of which are overt acts, the reaching of

which renders an "item" or instrument drawn against a customer's account impervious to non-acceptance by the bank. While the statute does not prescribe particular steps for effecting a setoff, in Comment 5 it is stated that "[i]n the case of setoff the effective time is when the setoff is actually made." 13 Page's Ohio Code Revised, 281 (1962). It is clear from this language that a setoff does not occur automatically each time a bank holds the matured debt of a depositor. The setoff must be "actually made." We do not hold that § 1304.23, standing alone, disposes of the issue in this case. However, it is a further sign which points to a policy of the State of Ohio, and of all states that have adopted the Uniform Commercial Code, which requires that internal banking transactions involving adverse interests be evidenced by bookkeeping entries or some similarly binding overt act. This policy not only provides criteria for determining conflicting claims, but also assures those who deal with banks that their rights will not be defeated by unsupported internal declarations of a self-serving nature.

■ While there is no requirement that the actual cross entries to reflect off setting debits and credits be made before the right of setoff is exercised, when the time the setoff is put in issue, it is incumbent upon the bank asserting the setoff to produce evidence of the time that the setoff was "actually made." As Judge Thomas pointed out in his memorandum, banks in Ohio may transact business outside of banking hours. There was nothing to prevent NCB from making a record by temporary manual entries if the computerized records were not operative at the time the decision to set off was reached on Saturday June 20, 1970. Furthermore, a telegram to the depositor, dispatched at that time, would have clearly established the time at which the setoff was effectuated.

However, the Supreme Court of Ohio does not appear to have adopted such a construction.

1. We are aware that some courts have construed similar statutes as effecting automatic setoff in other circumstances. See comment, Compensatio, 53 Calif.L.Rev. 224 (1965).

It would be unrealistic to hold that mere intra-mural declarations between employees of a bank, accompanied by no affirmative acts and no steps to record the transaction, are sufficient to effectuate a setoff. The business of banks is carried on, in the main, by making entries in records rather than by the transfer of money. It is a business of debits and credits. To permit a bank to effect a setoff against a customer's account by means of mere conversations among bank personnel would seriously undermine confidence in the banking system. Further, to permit the consequences of a critical order of a court of competent jurisdiction in reorganization proceedings to be evaded on the basis of the proof in this record would be detrimental to orderly legal processes.

The judgment of the district court is affirmed.