**PITTSBURGH NATIONAL BANK**

v.

**UNITED STATES of America,
Appellant.**

**No. 80–2805.**

United States Court of Appeals,
Third Circuit.

Argued July 13, 1981.

Decided Aug. 20, 1981.

---

John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Carleton D. Powell, James F. Miller (argued), Attys., Tax Division, Dept. of Justice, Washington, D. C., Robert J. Cindrich, U. S. Atty., Pittsburgh, Pa., for appellant.

Anthony P. Picadio (argued), John P. Papuga, Tucker, Arensberg, Very & Ferguson, Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and VAN DUSEN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

The Government appeals from an order of the district court, 498 F.Supp. 101 (W.D.Pa.1980) granting summary judgment for Pittsburgh National Bank (PNB) in a wrongful-levy action brought pursuant to 26 U.S.C. § 7426(a)(1) (1976).

### I.

Paul McArdle (the taxpayer) borrowed $10,400 from PNB on March 17, 1975. At that time he executed a ninety-day note, which provided that in the event of default PNB could set off its claim against the balance of any account of the taxpayer's at PNB. The note was renewed at the end of each ninety-day period until it expired on September 12, 1977, when the amount due PNB was $7,400.

Beginning on March 24, 1975, the Internal Revenue Service (the IRS) made a series of tax assessments against the taxpayer and filed tax lien notices in the office of the Allegheny County prothonotary. On September 14, 1977, the IRS served a notice of levy on PNB in the amount of the federal income taxes owed by the taxpayer. On that date the taxpayer had a balance of $2,514.97 in his checking account at PNB, and the bank had not taken any affirmative steps to set off these funds against the amount due on the note. Upon receipt of the notice of levy, PNB placed a "hold" on the taxpayer's checking account. On September 26, 1977, PNB issued a debit advice applying the checking account balance to the amount due on the note.

In accordance with 26 U.S.C. § 6332 (1976), PNB surrendered to the IRS the $2,514.97 balance in the taxpayer's checking account and demanded the return of this amount. After this demand was rejected, PNB brought a wrongful-levy action against the Government pursuant to section 7426(a)(1). The district court found that the taxpayer did not have a property interest in his checking account at the time of the levy because under Pennsylvania law PNB's right of setoff extinguished the taxpayer's property rights by operation of law when the note matured. It therefore granted PNB's motion for summary judgment.

### II.

Under 26 U.S.C. § 6321 (1976), the Government can impose a federal tax lien

upon "all property and rights to property" belonging to a delinquent taxpayer. Such a lien is created when the IRS makes an assessment against the taxpayer. *See* 26 U.S.C. § 6322 (1976). If the taxpayer fails to pay the assessment after notice and a demand for payment, the IRS may levy upon "all property and rights to property" that belong to the taxpayer and are subject to a federal tax lien. *See* 26 U.S.C. § 6331 (1976).

The dispute between PNB and the Government centers around whether the taxpayer's interest in the checking account constituted "property or rights to property" on September 14, 1977, the time of the levy. The parties agree that Pennsylvania law controls this question. If the taxpayer did not have a property interest in the checking account under Pennsylvania law, the district court's determination that the Government's levy was wrongful must be affirmed.

PNB contends that under Pennsylvania law its right of setoff was exercised by operation of law when the note matured because the amount due the bank exceeded the taxpayer's checking account balance. PNB maintains that this setoff terminated the taxpayer's property interest in the checking account as of September 12. The bank relies on a series of cases beginning with *Aarons v. Public Service Building & Loan Association,* 318 Pa. 113, 178 A. 141 (1935), to support its position.

In *Aarons,* a judgment creditor attached the depositor's checking account after the depositor's debt to the bank had matured but before the bank had taken any affirmative steps to exercise its right of setoff. The Supreme Court of Pennsylvania held that the bank could set off the checking account balance against the money owed it despite the intervening attachment. The court stated that as soon as a debt owed to a bank by a depositor matures, the bank's right of setoff extinguishes the depositor's rights in the account. The court emphasized that this setoff occurred by operation of law and that the bank "was not required first to make book entries charging one account and crediting the other before asserting its right to priority." 318 Pa. at 116, 178 A. at 142; *accord, Duffy v. Fifty-Eighth & Chester Avenue Building & Loan Association,* 325 Pa. 127, 189 A. 307 (1937); *Adolph Bergman Building & Loan Association v. Blaul,* 318 Pa. 126, 178 A. 140 (1935).

■ The Government does not dispute that *Aarons* created a doctrine of automatic setoff in Pennsylvania. Instead, it argues that this doctrine was superseded by the adoption in Pennsylvania of 13 Pa.Cons. Stat.Ann. § 4303 (Purdon 1980) (section 4–303 of the Uniform Commercial Code).[1] According to the Government, section 4303 demonstrates that a bank must take affirmative steps to exercise its right of setoff. Section 4303 provides:

(a) *When items subject to knowledge, notice, stop-order, legal process or set-off.*—Any ... set-off exercised by a pay- or bank, whether or not effective under other rules of law to terminate, suspend or modify the right or duty of the bank to pay an item or to charge the account of its customer for the item, comes too late to so terminate, suspend or modify such right or duty if ... the set-off is exercised after the bank has done any of the following:

(1) Accepted or certified the item.

---

1. The Government also asserts that with respect to banking transactions, § 4303 superseded the Defalcation Act, 12 Pa.Stat.Ann. § 601 (Purdon 1953). It notes that *Aarons* relied on the Act in establishing a doctrine of automatic setoff. The historical notes to §§ 601 and 4303, however, do not indicate that § 4303 amended or repealed the Defalcation Act with respect to banking transactions. *See* 12 Pa.Stat.Ann. § 601; 13 Pa.Cons.Stat.Ann. § 4303. Furthermore, we do not believe that we should read § 4303 as implicitly superseding the Act. As noted *infra,* there is no indication that § 4303 was intended to modify the doctrine of automatic setoff. Although the Defalcation Act was repealed by the Judiciary Act Repealer Act, 42 Pa.Cons.Stat.Ann. §§ 20001–20004 (Purdon 1981), this repeal was part of an attempt to "eliminate obsolete, unnecessary or suspended statutory provisions" and did not affect substantive rights contained in the statute. *See id.* § 20003(a); Pa. Bar Ass'n Judicial Code Explanation, *reprinted in* 42 Pa.Cons.Stat. Ann. §§ 101–1700, at xxx (Purdon 1981).

(2) Paid the item in cash.

(3) Settled for the item without reserving a right to revoke the settlement. . . .

(4) Completed the process of posting the item . . . or otherwise has evidenced by examination of such indicated account and by action its decision to pay the item.

(5) Become accountable for the amount of the item under section 4213(a)(4) (relating to final payment of item by payor bank) and section 4302 (relating to responsibility of payor bank for late return of item).

The Government recognizes that none of the exceptions in section 4303 expressly includes a levy. Nevertheless, it contends that under the statute "it is apparent that PNB's setoff rights are adversely affected, unless it takes some action prior to any of the enumerated events that cut off its rights." The Government supports its interpretation by pointing to comment 5 to section 4303, which states that "[i]n the case of setoff the effective time is when the setoff is actually made." *See Baker v. National City Bank of Cleveland*, 511 F.2d 1016, 1018 (6th Cir. 1975) (comment 5 to UCC section 4–303 indicates setoff cannot occur without affirmative steps); *cf. United States v. Citizens & Southern National Bank*, 538 F.2d 1101 (5th Cir. 1976) (UCC section 4–303's reference to setoff "exercised" by payor bank indicates need for some positive act).

We believe, however, that section 4303 was intended to regulate only the relationship between a payor bank and a holder of its depositor's checks when certain legal events occur. The statute on its face deals solely with the duty of a payor bank to pay an item when events such as an attachment, a stop order, or a setoff occur prior to final payment of the item. As comment 1 to section 4303 emphasizes, the statute "states the rule for determining the relative priorities between these various legal events and the item." *See* 3 R. Anderson, *The Uniform Commercial Code* 295 (2d ed. 1971) (UCC section 4–303 sets time limit within which certain legal events must occur to affect duty of payor bank to pay item); J. White & R. Summers, *Uniform Commercial Code* 692 (2d ed. 1980) (UCC 4–303 provides rule to settle rights of checkholder demanding payment when certain events intervene to prevent payment from drawer's account). There is no indication in the statute or its official comments that section 4303 was intended to establish a rule for resolving priority disputes between two competing claimants to a bank account when neither claimant is the holder of an item drawn on the account.

We also find no indication that section 4303 was intended to modify the doctrine of automatic setoff in Pennsylvania. Section 4303 does not establish standards to assess the validity of a legal event such as a setoff or an attachment. The statute merely provides a rule for determining the rights of the holder of a check when a valid legal event occurs.

We reject the Government's argument that the references found in section 4303 and its comments to a setoff "exercised" or "actually made" by a payor bank modified the doctrine of automatic setoff. The *Aarons* court emphasized that a bank's right of setoff extinguishes the depositor's interest in the account by operation of law when the debt to the bank matures. Thus, for purposes of section 4303, an automatic setoff can be viewed as "exercised" or "actually made" at the moment of the depositor's default.

Moreover, in the cases relied on by the Government, state law apparently did not provide for automatic setoff at any time before or after adoption of the Uniform Commercial Code. *See Citizens & Southern National Bank*, 538 F.2d at 1107 (applying Georgia law); *Baker*, 511 F.2d at 1017–18 (applying Ohio law). Furthermore, these courts did not believe that UCC section 4–303 was dispositive of the issue whether affirmative steps are required to effect a setoff. As the *Banker* court noted, the statute is a "further sign" that Ohio law requires "internal banking transactions involving adverse interests [to] be evidenced

by bookkeeping entries or some similarly binding overt act." *Id.* at 1018. We agree that the use of objective standards in Article Four of the Uniform Commercial Code to determine the legal consequences of specified actions may counsel requiring banks to take positive acts to exercise their right of setoff. However, neither section 4303 nor any other provision of Article Four provides a clear indication that the doctrine of automatic setoff is no longer valid in Pennsylvania.

■ The Government states that the district court's conclusion that the taxpayer's property interest was terminated by operation of law when the note matured is "belied" by the fact that the bank permitted the taxpayer to make withdrawals from the checking account on September 12 and 13. The district court found that the funds withdrawn after the note matured constituted an unsecured extension of credit because, "considering the outstanding balance of the loan, [they were] in excess of 'deposits' in the bank." The court stated that the checking account was under the sole control of the bank, and it characterized the situation prior to September 14 as an open-ended credit arrangement in which the depositor requested an extension of credit by drawing checks on the account.

We believe that the court's decision is consistent with the law of Pennsylvania. *See General Electric Credit Corp. v. Tarr*, 457 F.Supp. 935 (W.D.Pa.1978) (under Pennsylvania law bank did not "waive" setoff rights by allowing depositor to draw on account during period between maturation of debt and service of attachment); *Adolph Bergman Building & Loan Association v. Blaul*, 318 Pa. 126, 178 A. 140 (1935), *aff'g*, 115 Pa.Super. 329, 175 A. 743 (1934) (fact that bank allowed account to remain open and subject to depositor's control for sub-

stantial period does not defeat setoff made after attachment served); *cf.* 13 Pa.Const. Stat.Ann. § 4401(a) & comment 1 (Purdon 1980) (bank may pay item even though it creates overdraft because draft carries implied promise to reimburse bank). The Government has not cited any statutes or cases indicating that the district court's conclusion is contrary to Pennsylvania law.[2]

Finally, the Government maintains that there are sound policy reasons for requiring a bank to take affirmative steps to exercise its right of setoff. The Government asserts that permitting setoff to occur without affirmative action would be "unrealistic" and would "seriously undermine confidence in the banking system." *Baker*, 511 F.2d at 1019. It also contends that an "affirmative steps" requirement would promote certainty in commercial dealings. We believe, however, that these policy arguments should be directed to the legislature or the courts of Pennsylvania. Our duty in this case is to apply Pennsylvania law as we find it, and we conclude that the doctrine of automatic setoff established by *Aarons* remains the law of Pennsylvania.

### III.

The order of the district court will be affirmed.

---

2. The Government appears to cite *In re Penn Central Transportation Co.*, 458 F.Supp. 1234, 1328–1330 (E.D.Pa.1978), for the proposition that there could be no effective lien unless the bank had previously exercised its right of setoff by taking affirmative steps. The district court was there dealing with the right of setoff in the context of the overriding federal reorganization law, regardless of state law. *See In re Penn Central Transportation Co.*, 453 F.2d 520 (3d Cir. 1972). If the district court opinion can be read to imply that Pennsylvania law would require a Pennsylvania bank to take affirmative steps to effectuate its setoff in the present circumstances, it is not in accordance with our understanding of Pennsylvania law.