**The FIRST JERSEY NATIONAL BANK, Plaintiff,**

v.

**NATIONAL BANK OF NORTH AMERICA, Defendant.**

**No. 82 Civ. 1616 (RWS).**

United States District Court, S.D. New York.

Sept. 30, 1982.

---

Shea & Gould, New York City, for plaintiff; Joel I. Papernik, Richard M. Goldstein, New York City, of counsel.

Cole & Deitz, New York City, for defendant; Edward N. Meyer, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendant National Bank of North America ("NBNA") moves pursuant to Fed. R.Civ.P. 12(b) to dismiss Count II of plaintiff First Jersey National Bank's ("First Jersey") complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, the motion is denied.

In September 1981, M.S. Wien & Co. ("Wien") issued three checks to its own order drawn on its account at NBNA. Wien deposited these checks in another account it maintained at First Jersey, who presented them via the check clearing system to NBNA for payment. NBNA dishonored the checks and returned them to First Jersey. This lawsuit resulted.

First Jersey's complaint contains two counts. In Count I, not at issue here, First Jersey contends that the items were finally paid by NBNA, within the meaning of N.Y. U.C.C. § 4–213 (McKinney 1964) (hereinafter "U.C.C."),[1] and that therefore NBNA's dishonor of the checks was wrongful.

Count II alleges that the checks were dishonored for insufficient funds due to a setoff exercised by NBNA against Wien's account. First Jersey claims that the setoff came too late in the check handling process, and that NBNA became obligated to pay the items under U.C.C. § 4–303(1).[2]

In support of its motion to dismiss Count II, NBNA contends that the propriety of

1. Section 4–213 reads, in pertinent part:

   (1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:
   (a) paid the item in cash; or
   (b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or
   (c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or
   (d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.
   Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item.

2. Section 4–303 reads, in pertinent part:

   Any ... setoff exercised by a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if ... the setoff is exercised after the bank has done the following:
   (a) accepted or certified the item;

NBNA's setoff against Wien's account is irrelevant. Rather, it says, the only relevant question is whether the checks were returned to First Jersey on a "timely basis." NBNA's argument virtually ignores, however, U.C.C. 4–303, which squarely applies to the facts of this case.

■ Section 4–303 is designed to settle priority disputes between the holder of a check who demands payment and a party who claims funds in the account through one of the "four legals." [3] *Pittsburgh Nat'l Bank v. United States,* 657 F.2d 36, 39 (3d Cir.1981); J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 17–7 at 693 (2d ed. 1980); U.C.C. § 4–303 comment 1. This lawsuit is a priority dispute between the holder, First Jersey, and a party claiming funds in the account, NBNA. Therefore, resolution of the dispute is governed by Section 4–303. *See Pittsburgh Nat'l Bank, supra; Raymer v. Bay State Nat'l Bank,* 424 N.E.2d 515, 519–520 (Mass.1981).

There has been some controversy among the commentators over the interplay of sections 4–213 and 4–303, particularly over whether section 4–303 states an independent basis for the payor bank's liability to the holder. *See* J. White & R. Summers, *supra,* § 17–7 at 700–03; *compare* Malcolm, *Reflections on West Side Bank: A Draftsman's View,* 18 Cath.U.L.Rev. 23, 24–31 (1968) *with* Leary & Tarlow, *Reflections on Articles 3 and 4 for a Review Committee,* 48

Temple L.Q. 919, 929–33 (1975). I conclude that it does.

■ First, if section 4–303 were not meant to state a rule of liability independent of section 4–213, it would be superfluous. Section 4–303 was included in the Code, however, and was therefore meant to serve a purpose. The fact that section 4–303 contains language not present in section 4–213,[4] indicates that, in the case of the "four legals," a special rule of liability was meant to be imposed in addition to the final payment rule of section 4–213 and the late return rule of section 4–302.

This conclusion is in accord with the "legislative history" of section 4–303, as discussed by the drafter of the final version of the section in Malcolm, *Reflections on West Side Bank, supra,* at 26–31. Indeed, the drafter himself has stated that section 4–303

> was designed to state rules as to "who wins" as between a check in the process of payment and each of the "four legals." ... [U]nder the second clause of Section 4–302(1)(d) a check "might win" as against one of the "four legals" but still have not progressed far enough to reach final payment and the accountability stage under Section 4–213.

*Id.* at 31. In addition, this decision has the added virtue of providing a certain rule in cases of this type, *See* J. White & R. Summers, *supra,* § 17–7 at 702.[5]

---

(b) paid the item in cash;
(c) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement;
(d) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith or otherwise has evidenced by examination of such indicated account and by action its decision to pay the item; or
(e) become accountable for the amount of the item under subsection (1)(d) of Section 4–213 and Section 4–302 dealing with the payor bank's responsibility for late return of items.

3. The "four legals," set out in the preamble of section 4–303(1), are: knowledge or notice of the customer's death, incompetency, or bank-

ruptcy; the customer's stop order; legal process; setoff by the payor bank.

4. *See, e.g.,* the final clause of § 4–303(1)(d).

5. I agree with Messrs. White and Summers that a court would be "in error" if it analyzed a priority case under 4–213, and, failing to find the payor bank accountable, did not consider section 4–303. J. White & R. Summers, *supra,* § 17–7 at 701, discussing *West Side Bank v. Marine Nat'l Exchange Bank,* 37 Wis.2d 661, 155 N.W.2d 587 (1968). This is not to say, however, that consideration of section 4–213 is improper. Thus, if a court finds a payor bank accountable for an item under Section 4–213, it need not concern itself with section 4–303. *See H. Schultz & Sons, Inc. v. Bank of Suffolk County,* 439 F.Supp. 1137 (E.D.N.Y.1977); *Community Bank v. United States Nat'l Bank of Oregon,* 276 Or. 471, 555 P.2d 435 (1976).

For the foregoing reasons, NBNA's motion to dismiss Count II is denied.

IT IS SO ORDERED.