**In re Richard J. CRISPELL and Donna M. Crispell, Debtors.**

**Richard J. CRISPELL and Donna M. Crispell, Plaintiffs,**

v.

**LANDMARK BANK, Defendant.**

Bankruptcy No. 86–01206(2).
Adv. No. 86–0304(2).

United States Bankruptcy Court,
E.D. Missouri, E.D.

April 22, 1987.

On Motion to Alter or Amend
Judgment May 19, 1987.

Charles H. Huber, St. Ann, Mo., for plaintiffs.

Peter D. Kerth, Clayton, Mo., for defendant.

Robert J. Blackwell, St. Louis, Mo., Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### INTRODUCTION

After the filing of their Chapter 7 case, Debtors' bank froze their checking account and setoff $75.00. Thereafter, Debtors filed a Complaint for damages and attor-

ney's fees wherein they alleged that the bank had willfully violated the automatic stay. The bank answered, denying liability, and filed its own counterclaims. Based upon the findings of fact and conclusions of law set forth below, the Court will this date dismiss the bank's counterclaims and grant judgment for Debtors on their Complaint against the bank awarding them $75.00 in actual damages. The Court, however, will not grant Debtors' request for punitive damages or attorney's fees.

FINDINGS OF FACT

1. Prior to filing their Chapter 7 case on May 23, 1986, Debtors, husband and wife, had a checking account at Landmark Bank (the "Bank").

2. On May 23, 1986, Debtors had a balance of $353.25 in this account.

3. On May 23, 1986, Debtors also were indebted to the Bank in the amount of $384.45. The Bank had no security for this indebtedness which was incurred under a credit line that allowed Debtors to borrow from the Bank by overdrawing their checking account. Amounts borrowed were to be repaid through so-called "automatic" monthly debits of $25.00 against Debtors' checking account balance. Pursuant to this credit agreement, the Bank made such an automatic debit of $25.00 to Debtors' checking account on May 23, 1986. Between May 23, 1986 and June 6, 1986, Debtors made deposits of $812.62 into their checking account. During this same period Debtors also made withdrawals and drew checks from the account which were honored by the Bank in the amount of $651.04. Thus, on June 6, 1986, Debtors' checking account balance was $514.83.

4. The $514.83 in Debtors' checking account on June 6, 1986, was comprised entirely of Debtors' post-petition earnings.

5. On June 6, 1986, the Bank received actual notice of Debtors' Chapter 7 case.

6. Upon the advice of counsel, Daniel Sweeso ("Sweeso"), the Bank's Vice President, orally notified Debtors on June 6, 1986, that their account had been frozen and that checks drawn on the account would not be honored nor deposits accepted.

7. Also on June 6, 1986, Sweeso advised Debtors in writing of the freeze and that the Bank had requested further instructions from Debtors' Trustee regarding the account. The Bank's June 6, 1986 letter to the Trustee notified him of the Bank's action, advised him that Debtors had an outstanding loan balance of $383.57 and requested further instructions.

8. On June 23, 1986, the Bank made another "automatic" debit of $25.00 to Debtors' checking account.

9. On July 9, 1986, the Trustee wrote the Bank stating that he had filed his Report of No Distribution and that, therefore, the bankruptcy estate had no interest in Debtors' checking account.

10. On July 14, 1986, the Bank released the freeze on Debtors' checking account. Sweeso testified that there "was not an anticipated thought of offset at that time."

11. During the period when Debtors' checking account was frozen, Debtors were required to make payments in satisfaction of returned checks and incurred bad check charges of $30.00. The returned checks caused Debtors to suffer embarrassment before various of their creditors. Nevertheless, the problem did not require Debtors to seek any medical treatment and the Debtor husband testified that he did not lose any sleep over it.

12. On July 23, 1986, the Bank made another "automatic" debit of $25.00 to Debtors' checking account.

13. On August 6, 1986, Debtors withdrew all remaining funds in their checking account by a check drawn for the balance of $445.46. With the exception of the $75.00 which had been "automatically" debited to their account, Debtors received all funds then on deposit including the $30.00 previously charged by the Bank to cover bad checks. The Bank failed to return the $75.00 due to Sweeso's overlooking the "automatic" debit feature of Debtors' account.

14. On August 27, 1986, Debtors filed the instant adversary proceeding against

the Bank. Debtors requested that the Court find the Bank in contempt for violating the automatic stay, and award them actual and punitive damages together with their attorney's fees.

15. By separate pleading filed October 27, 1986, Debtors demanded a jury trial. On November 6, 1986, the Bank moved to strike Debtors' demand and on said date the Court denied Debtors' demand for a jury trial.

16. On October 17, 1986, the Bank filed its Answer and Counterclaim to Debtors' Complaint. As affirmative defenses the Bank alleged its own good faith in freezing Debtors' checking account and asserted that Debtors should be estopped from asserting their claim against the Bank by reason of their writing checks in contravention of the Bank's right of setoff. The Bank's counterclaims against Debtors sounded in conversion, breach of warranty, and fraud, respectively, and each as a necessary predicate alleged that the funds in Debtors' account on the date of their bankruptcy constituted "cash collateral" subject to the Bank's right of setoff. At no time prior to the filing of its Answer and Counterclaim, however, did the Bank file any motions or adversary proceedings with the Court alleging any such right of setoff.

17. On November 6, 1986, Debtors filed their Answer to the Bank's counterclaims, denying the Bank's entitlement to relief.

18. After a period of discovery followed by the submission of pretrial briefs, this proceeding was tried on February 2, 1987, at which time evidence was adduced, argument of counsel heard, and leave granted to supplement the record with documentation of attorney's fees requested.

19. On February 10, 1987, Debtors' attorney submitted his Statement of Attorney Fees requesting $3,252.00 based upon 52.4 hours of services at $60.00 per hour and on February 20, 1987, the Bank filed its Response thereto.

20. Any of the foregoing findings of fact deemed to be conclusions of law are hereby incorporated into the Conclusions of Law.

## CONCLUSIONS OF LAW

### A. Jurisdiction

1. This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), which the Court may hear and determine. *See also, Budget Service Co. v. Better Homes of Virginia,* 804 F.2d 289, 292 (4th Cir.1986) ("a proceeding to prosecute a violation of the automatic stay is a core proceeding.").

2. Because a proceeding to prosecute a violation of the automatic stay is a core proceeding which is equitable in nature, the party prosecuting such a proceeding does not have a right to a trial by jury. *In re I.A. Durbin, Inc.,* 62 B.R. 139 (S.D. Fla.1986); 1 Collier on Bankruptcy ¶ 3.01[7][b] (15th ed. 1987). Therefore, the Court has denied Debtors' request for a jury trial and hereby determines their Complaint without a jury.

### B. Debtors' Complaint

3. Debtors contend that the Bank's actions constitute willful violations of Sections 362(a)(3) and 362(a)(7). The Bank's actions may be separated into two components, the first being the setoff of $75.00 through the "automatic" debits, and the second being the administrative freeze placed on Debtors' checking account from June 6 to July 14, 1986.

4. The Bank concedes that its automatic debits of $25.00 on May 23, June 23, and July 23, 1986, constituted setoffs in violation of Section 362(a)(7), which provides that the filing of a bankruptcy petition operates as a stay of "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." The Bank, however, denies that these violations were "willful" in the sense required for the imposition of attorney's fees and punitive damages under Section 362(h). The Court agrees with the Bank.

5. Section 362(h) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." "Willful" in this context means "deliberate" or "intentional". *In re Tel-A-Communications Consultants, Inc.*, 50 B.R. 250, 254 (Bankr.D.Conn.1985).

6. The automatic debit of $25.00 made on May 23, 1986, the date of Debtors' bankruptcy, clearly was neither deliberately nor intentionally in violation of the stay since the Bank did not have notice of Debtors' bankruptcy until June 6, 1986. The automatic debits of June 23, 1986 and July 23, 1986, however, were made after the Bank had notice. Sweeso was the bank officer responsible for allowing the debits to occur. They were made by reason of Sweeso's oversight in not terminating the "automatic" debit feature of Debtors' account. While Sweeso's oversight did result in violations of the stay by the Bank, such violations were neither deliberate nor intentional and were, therefore, not "willful". The Bank's violations of the stay not being "willful" under Section 362(h), no award of attorney's fees or punitive damages will be made on account of these violations.

7. Debtors assert that the administrative freeze imposed by the Bank on their checking account also constituted a setoff in willful violation of Section 362(a)(7). By way of background, in Missouri "a bank may look to deposits in its hands for the repayment of any indebtedness to it on the part of the depositor and may apply the debtor's deposits on his debts to the bank as they become due * * * [S]uch right grows out of the debtor and creditor relation subsisting between bank and depositor, and finds its basis in the right of setoff, and in the application of equitable principles." *Adelstein v. Jefferson Bank and Trust Co.*, 377 S.W.2d 247, 251 (Mo. 1964), *quoting*, 9 C.J.S. *Banks and Banking* § 296, pp. 614, 615. The act of setoff, however, "is not complete until three steps have been taken: (1) the decision to exercise the right, (2) some action which accomplishes the setoff and (3) some record which evidences that the right of setoff has been exercised." *Hill v. Mercantile First National Bank*, 693 S.W.2d 285, 291–292 (Mo.App.1985), *quoting*, *Baker v. National City Bank of Cleveland*, 511 F.2d 1016, 1018 (6th Cir.1975). In the case at bar the Court concludes that the Bank never even decided to exercise its right of setoff. Although it imposed the freeze on June 6, 1986, as late as July 14, 1986, the date the freeze was lifted, Sweeso had yet to anticipate setting off Debtors' account. Indeed, the Bank released all funds in the account on August 6, 1986 without any setoff other than the $75.00. Moreover, since a creditor bank's state law right of setoff is specifically recognized by Section 553(a), and Section 542(b) permits such a creditor to except funds subject to the right of setoff from the requirement that property of the estate owed by the creditor to the debtor and payable on demand to debtor's account be turned over to the trustee, the Court also concludes that "although the Code does not expressly provide for an administrative 'freeze' by a creditor on an insolvent debtor's account, it is implied by a reading of sections 362(a)(7), 542(b) and 553." *Stann v. Mid American Credit Union*, 39 B.R. 246, 248 (D.Kan.1984). *See generally*, *In re Williams*, 61 B.R. 567, 572–576 (Bankr.N.D.Tex.1986) (citing cases). Therefore, the Bank did not violate Section 362(a)(7) merely by imposing an administrative freeze on Debtors' account.

8. While the mere imposition of an administrative freeze does not in itself violate the stay, the continuation of that freeze for any extended period of time would constitute a setoff in violation of Section 362(a)(7). This is because such a continuation would have the same substantive effect as if the three steps for setoff noted in *Hill* and *Baker* had been consciously carried out. As a court of equity, this Court must look to substance rather than mere form. Accordingly, if within seven days following the imposition of such a freeze, the creditor neither turns over the frozen funds to the trustee nor requests the Court to allow it to exercise its right of setoff under Section 553, the Court will deem

such a freeze to be a willful violation of the stay. *See, In re Carpenter*, 14 B.R. 405, 407 (Bankr.M.D.Tenn.1981) (" 'freezing' of funds subject to a valid setoff claim does not violate the automatic stay of 11 U.S.C. § 362(a)(7), provided that a complaint seeking relief from the stay is filed promptly thereafter.")

■ 9. In the case at bar, the Bank froze the Debtors' account from June 6, 1986 to July 14, 1986. The Bank did not turn over the funds in Debtors' account to the Trustee or request the Court to allow it to exercise any right of setoff. Instead, upon the advice of counsel, it requested instructions from the Trustee and turned over the funds to Debtors upon learning of the estate's lack of interest in the funds. While the Bank's action constitutes a violation of Section 362(a)(7) under the principles enunciated above, in view of the fact that this is a case of first impression in this district and in view of the not unreasonable construction of its duty by the Bank, the Court will not deem the instant violations to have been willful.

■ 10. Debtors also claim that the Bank's imposition of the freeze was in willful violation of Section 362(a)(3), which provides that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The Court has found the funds in Debtors' checking account on June 6, 1986, the date the Bank imposed the freeze, to be comprised solely of post-bankruptcy earnings. As such, these funds were not property of the estate under Section 541. Therefore, the Bank's imposition of the freeze, while perhaps wrongful on some other basis, did not violate Section 362(a)(3).

■ 11. There being no willful violations of the stay, Debtors are not entitled to punitive damages, attorneys' fees or a holding of contempt against the Bank. They are only entitled to actual damages. In addition to damages of $75.00 incurred by Debtors as a result of the Bank's unauthorized setoff, Debtors claim damages for the emotional distress and humiliation suffered as a result of the Bank's actions in freezing their account. As noted, Debtors did suffer some embarrassment as a result of checks which were returned unpaid during the freeze period, but they did not require medical treatment for their distress. Because the emotional distress suffered by Debtors was fleeting, inconsequential and medically insignificant, the Court concludes that it is not compensable. *Bass v. Nooney Co.*, 646 S.W.2d 765, 768–773 (Mo.1983) (damages for negligent infliction of emotional distress are compensable only if mental distress is medically diagnosable and of sufficient severity so as to be medically significant). Debtors, therefore, will be awarded only $75.00 on their Complaint.

*Bank's Counterclaims*

■ 12. The Bank has asserted three counterclaims against Debtors. These counterclaims sounded in conversion, breach of warranty, and fraud, respectively, and each as a necessary predicate alleged that the funds in Debtors' account on the date of their bankruptcy constituted "cash collateral" subject to the Bank's right of setoff. The gravamen of the counterclaims is that Debtors without authority to do so deprived the Bank of its right of setoff. Section 363(a) defines cash collateral as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." The Court agrees that Debtors' funds on deposit on the date of bankruptcy were cash collateral upon which the Bank clearly had an unexercised right of setoff on the date of bankruptcy, 2 Collier on Bankruptcy ¶ 363.02 (15th Ed.1987). The Bank, however, by voluntarily releasing the funds in the checking account to the Debtors on July 6, 1986, waived whatever setoff rights it may have had. *In re Wil-*

*son,* 49 B.R. 19, 21 (Bankr.N.D.Tex.1985); *In re Archer,* 34 B.R. 28, 30 (Bankr.N.D. Tex.1983); *In re Royal Crown Bottling Co. of Boaz, Inc.,* 29 B.R. 52, 54 (Bankr.N. D.Ala.1981). The Bank's counterclaims, therefore, will be dismissed.

14. An Order consistent with this Memorandum Opinion will be filed simultaneously therewith.

15. Any of the foregoing conclusions of law deemed to be findings of fact are hereby incorporated into the Findings of Fact.

### ORDER

For the reasons stated in the Memorandum Opinion also filed this date, it is

ORDERED that upon the Complaint filed by Plaintiffs, Richard J. Crispell and Donna M. Crispell, against Defendant, Landmark Bank, on August 27, 1986, judgment be and hereby is GRANTED in favor of said Plaintiffs and against Defendant, Landmark Bank, in and for the sum of $75.00; and

IT IS FURTHER ORDERED that upon the Counterclaims of Landmark Bank against Richard J. Crispell and Donna M. Crispell filed October 17, 1986, judgment be and hereby is GRANTED in favor of Richard J. Crispell and Donna M. Crispell and against Counterclaimant, Landmark Bank, and that, accordingly, said Counterclaims be and hereby are dismissed on the merits; and

IT IS FURTHER ORDERED that the parties are to bear their own costs in this action.

### ON MOTION TO ALTER OR AMEND JUDGMENT

The Court filed its Order and Memorandum Opinion in this proceeding on April 22, 1987. On May 4, 1987, Plaintiffs filed their Motion To Alter Or Amend Judgment. Defendants responded by letter received May 11, 1987. Upon consideration of the motion, the letter, the record as a whole and for the reasons stated below, the Court will deny Plaintiffs' motion.

In its Memorandum Opinion, the Court found that the Defendant Bank's freeze of Plaintiffs' checking account from June 6, 1986 to July 14, 1986 was a violation of the stay within the meaning of Title 11, Section 362(a)(7). The Court, however, did not find the violation to have been "willful".

Plaintiffs suggest that the Court should have found the violation to have been willful. As grounds therefore, Plaintiffs point to the Court's finding that Plaintiffs' funds on deposit at the Bank on June 6, 1986, consisted entirely of post-petition earnings. As such, Plaintiffs further suggest that these funds were not subject to a valid right of setoff by the Bank, the requisite mutuality of obligation being lacking. Furthermore, Plaintiffs assert that the record shows that the Bank either knew or should have known that the funds were not subject to a valid right of setoff. Thus, Plaintiffs conclude that the Bank's violation of the stay was willful.

■ Plaintiffs' argument is flawed. Assuming, without deciding, that the funds were not subject to a valid right of setoff on June 6, 1986, in order to constitute a "willful" violation of the stay, the Bank's imposition of the freeze would have to be characterized as either a "deliberate" or an "intentional" violation of the stay. If the Bank did not know but only *should have known* that it did not have a right of setoff, then the Bank's violation of the stay cannot be fairly characterized as either a deliberate or an intentional violation of the stay. Thus, such a violation cannot be deemed to have been willful.

If, on the other hand, the Bank did in fact know that it had no valid right of setoff when it froze Plaintiffs' account, then arguably its violation of the stay was willful. In order to have such knowledge, the Bank would have to have known that the funds in Plaintiffs' account on June 6, 1986 did consist entirely of post-petition earnings. Upon review of the testimony, however, the Court finds that the Bank had not analyzed the Plaintiffs' post bankruptcy deposits and had no knowledge of whether they consisted of pre-bankruptcy or post-bankruptcy earnings. In no event, therefore, could the Bank be said to have known that it had no right to setoff when it

imposed the freeze on Plaintiffs' account. In short, the Bank lacked the knowledge requisite for finding a willful violation of the stay. Accordingly, by separate Order, Plaintiffs' Motion will be DENIED.