**AMERICAN NATIONAL BANK & TRUST CO. OF CHICAGO, N.A., Plaintiff,**

v.

**CENTRAL BANK OF DENVER, N.A., Defendant.**

**Civ. A. No. 90–B–0771.**

United States District Court, D. Colorado.

Sept. 20, 1991.

Peter R. Bornstein, Kenneth S. Kramer, Berenbaum & Weinshienk, P.C., Denver, Colo., for plaintiff.

Patti Hudson Marks, Thomas J. Bissell, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This case can be adjudicated on the parties' cross-motions for summary judgment. The issue is whether Central Bank of Denver (Central Bank) has a valid defense to its untimely return of four electronic debits. The question is adequately briefed and oral argument will not materially aid its resolution. I hold that Central Bank has no valid defense, grant plaintiff's motion, and deny defendant's motion.

The facts are undisputed. In December, 1989, Murray Distributing Co. (Murray) had a business checking account with Central Bank. This account allowed for the charging of electronic debits by Murray's customers and suppliers. Barton Brands, Ltd., (Barton) supplied Murray with several brands of beer. As payment for each shipment, Murray would allow Barton to deposit pre-authorized electronic debits into its account with American National Bank and Trust Co. (American National). These electronic debits were treated as any other demand item by the federal reserve system and by the clearinghouse agreement between the parties.

On December 14, 1989, Barton submitted three debits each for $14,131.20 to American National for collection. The transaction date for these debits was no later than December 18, 1989. The "midnight deadline" to return the items was December 19,

1989. Central Bank returned these items through the federal reserve system on December 20, 1989, missing its deadline by one day.

On December 19, 1989, Barton submitted another debit for the same amount to American National. The effective date for this transfer was no later than December 21, 1989, and the midnight deadline was the next day. Central Bank returned the debit on December 27, 1989. In both instances, Central Bank has admitted that the reason for the late returns was "operational error."

On December 15, 1989, Murray filed a Chapter 11 bankruptcy petition. Notice was given to both Barton and Central Bank on that day.

Barton demanded that American National credit its account for $56,524.80 pursuant to C.R.S. § 4-4-213(3). American National credited Barton's account and then returned the debits to Central Bank for payment, asserting that Central Bank's return of the items was untimely.

Central Bank agrees that it did not return the debits by the applicable midnight deadline. *See,* C.R.S. §§ 4-4-104(1)(h), 4-4-213(1)(d), and 4-4-302. Central Bank also admits that it is strictly liable for the face amount of the four items if it does not have a "valid defense" under C.R.S. § 4-4-302. Thus, the sole issue presented by these motions is whether Murray's bankruptcy is a valid defense to Central Bank's strict liability for its untimely return of the debits.

■ Colorado's Uniform Commercial Code controls. C.R.S. § 4-4-302 states in relevant part:

> In the absence of a valid defense such as breach of presentment warranty (subsection (1) of section 4-4-207), settlement effected or the like, if an item is presented on or received by a payor bank the bank is accountable for the amount of: (a) A demand item other than a documentary draft *whether properly payable or not* if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day

of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline.

(emphasis added). *See also,* C.R.S. § 4-4-213. Courts uniformly recognize that this section imposes strict liability on a payor bank if it fails to meet its midnight deadline for paying, returning, or sending notice of dishonor. *See,* Annot., *Construction and Effect of UCC §§ 4-301 and 4-302 Making Payor Bank Accountable For Failure to Act Promptly on Item Presented for Payment,* 22 ALR4d 10 (1983); *Toronto–Dominion Bank v. Central National Bank and Trust Co.,* 753 F.2d 66 (8th Cir, 1984); *Wiley v. People's Bank and Trust Co.,* 438 F.2d 513 (5th Cir.1971).

■ The UCC requires strict compliance with the midnight deadline even if the item is not properly payable. *See e.g., Central Bank and Trust Co. v. First Northwest Bank,* 332 F.Supp. 1166 (E.D.Mo.1971), *aff'd,* 458 F.2d 511 (8th Cir.1972). I hold that strict compliance with the midnight deadline requirement is mandatory even though Central Bank could have properly refused to pay the debits presented against Murray's account because of its bankruptcy.

This rule promotes efficiency, certainty and finality in our national banking system. If every payee who received a check was at risk for the return of funds received from a payor until a statute of limitations had run, commerce would grind to a halt and checks would not be treated as cash. "[I]t seems clear, at least as checks are currently used in our society, that prompt response ... is an integral and probably critical part of the bank's performance." White and Summer, *Uniform Commercial Code,* 827 (3d ed. 1988). Moreover, the payor bank is in the best position to know the status of its depositor's account. "Placing the loss [on the payor bank] will facilitate the use of the check as a medium of exchange, and will force the one who can most cheaply avoid the loss to do so." *Id.* Because these policies apply with equal force to electronic debits, I find no compelling rea-

**174**

son to treat them any differently than paper checks.

This action exemplifies these precise concerns. Central Bank knew that Murray's account was converted into a debtor-in-possession account on December 15, 1989, when Murray filed for bankruptcy. Central Bank, therefore, properly could have refused to pay the four debits. However, by failing to meet its midnight deadline, Central Bank caused American National to believe that the debits were properly payable and caused American National to incur liability to its customer for the amount of the debits, defeating the goals of certainty, finality and reliability.

■ Central Bank does not allege any of the recognized valid defenses to Uniform Commercial Code section 4–302 liability. Rather, Central Bank contends that C.R.S. § 4–4–303 somehow operates as a valid defense. I disagree.

■ Section 4–303 and 4–302 are independent. Section 4–303 is designed to settle priority disputes between a holder of a check who demands payment and a party who claims funds in the account because of various legal events, such as bankruptcy, attachment, stop order, or set-off occurring before final payment of an item. *Pittsburgh National Bank v. U.S.*, 657 F.2d 36 (3rd Cir.1981); C.R.S. § 4–4–303, comment 1. It regulates only the relationship between a payor bank and a holder of its depositor's checks when such legal events occur. *Id.* Section 4–302, on the other hand, sets the deadline for returning an item or sending notice of dishonor if the item is not payable. A payor bank could thus have a valid defense to payment but no defense to its untimely dishonor and the resulting liability.

Here, under section 4–303, the notice of bankruptcy merely established priority in the bankruptcy estate over the four debits. The notice of bankruptcy did not alter Central Bank's strict liability under section 4–302 for failure to meet the midnight deadline. That Central Bank could have refused payment because of the pending bankruptcy does not constitute a valid section 4–302 defense. *See, First Jersey Na-*

*tional Bank v. Bank of North America*, 563 F.Supp. 901, 963 n. 5 (S.D.N.Y.1982), ("[I]f a court finds a payor bank accountable under section 4–213, it need not concern itself with section 4–303").

Accordingly, IT IS ORDERED THAT:

(1) Plaintiff's motion for summary judgment is GRANTED;

(2) Defendant's motion for summary judgment is DENIED;

(3) Final judgment shall enter in favor of plaintiff and against defendant for $56,-524.80, together with prejudgment interest and costs.