**KIMBERLY A. ALLEN TRUST,**
**Plaintiff–Appellant,**

v.

**FIRSTBANK OF LAKEWOOD,**
**N.A., Defendant–Appellee.**

**No. 97CA2029.**

Colorado Court of Appeals,
Div. II.

May 13, 1999.

As Modified on Denial of Rehearing
Oct. 21 and Oct. 28, 1999.

Dennis E. Baker, P.C., Dennis E. Baker, John R. Mallory, Denver, Colorado, for Plaintiff–Appellant.

Rothgerber, Johnson & Lyons LLP, Stephen T. Johnson, Samuel M. Ventola, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge KAPELKE.

In this action to recover funds charged back to its bank account, plaintiff, Kimberly A. Allen Trust (the Trust), appeals from the summary judgment entered in favor of defendant, FirstBank of Lakewood, N.A. (FirstBank). We reverse and remand with directions.

On March 14, 1997, the Trust deposited into its account with FirstBank a check drawn on Bank One (payor bank) in the amount of $110,737.50. A hold was placed on the account pending payment of the check. On March 17, 1997, the first business day after deposit, FirstBank presented the check

to payor bank for collection and was given provisional credit.

On March 20, 1997, after payor bank advised FirstBank that the check had cleared, the Trust was informed that the hold on its account had been lifted. However, on March 25, 1997, payor bank notified FirstBank that it was returning the check for insufficient funds. After return of the check, FirstBank charged back the amount of the check, plus a return fee, to the Trust's account.

The Trust filed this action against First-Bank to recover the funds debited against its account, asserting that FirstBank was precluded from revoking the provisional credit and that the charge-back was therefore improper.

FirstBank filed a motion for summary judgment with supporting affidavits, and the Trust filed a cross-motion for summary judgment. The trial court granted First Bank's motion and denied that of the Trust.

### I.

■ The Trust contends that FirstBank did not have a right of charge-back because the provisional payment it had received became final when the payor bank failed to return the check by its "midnight deadline." We agree conclude that summary judgment should not have been entered and that further proceedings are necessary.

Section 4–4–214(a), C.R.S.1998, which defines a collecting bank's right of charge-back or refund, states:

> If a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension or payments by a bank, or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge-back the amount of any credit given for the item to its customer's account, or obtain refund from its customer, whether or not it is able to return the item, if by its midnight deadline or within a longer reasonable time after it learns the facts, it returns the item or sends notification of the facts.... *These rights to revoke, charge back, and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final.* (emphasis added)

If a collecting bank such as FirstBank here receives a settlement for an item which "is or becomes final," the bank is "accountable" to its customer for the amount of the item and any provisional credit given for the item in an account with its customer becomes final. Section 4–4–215(d), C.R.S.1998.

Pursuant to § 4–4–215(a), an item is "finally paid" by a payor bank when it has first done any of the following:

(1) Paid the item in cash;

(2) Settled for the item without having a right to revoke the settlement under statute, clearing-house rule, or agreement; or

(3) *Made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing-house rule, or agreement.* (emphasis added)

Pursuant to § 4–4–302, C.R.S.1998, if an item is presented to and received by a payor bank, that bank is "accountable" for the amount of the demand item if it "retains the item beyond midnight of the banking day of receipt without settling for it or, whether or not it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline." The "midnight deadline" is midnight of the next banking day after the item is received by the payor bank. Section 4–4–104(a)(10), C.R.S.1998.

In urging that the provisional settlement had not become final and that it was thus entitled to charge back the amount of the check to the Trust's account, FirstBank relies on *Mercantile Bank & Trust Co. v. Hunter,* 31 Colo.App. 200, 501 P.2d 486 (1972), as did the trial court in its ruling. In *Mercantile,* the banking customer deposited a check for collection and was allowed to withdraw the amount of the check the following day. The depositary bank forwarded the check to an intermediary bank for collection. That bank, in turn, forwarded it to a foreign payor bank. Approximately four months later, the collecting bank was informed by the intermediary bank that the check had been

returned as a result of a "stop payment" order. The bank then demanded that the depositor refund the amount of the check.

A division of this court held that even though the payor bank had retained the demand item beyond its midnight deadline without returning it, and thereby had become accountable for the item, this did not cause the provisional settlement between the depositor and the depositary bank to become final. Accordingly, the division concluded that the depositary bank still had a right of charge-back against the depositor. The division reasoned that unless the check was "actually paid" by the payor bank, the provisional settlement did not become final merely because the payor bank was accountable to *its* customer.

Here, the Trust has attempted to distinguish the *Mercantile* case. In our view, however, the facts of this case are not distinguishable in any material respect from those in *Mercantile*, a precedent which the trial court was, of course, required to follow. Nevertheless, because we conclude that the holding in *Mercantile* is inconsistent with the language and intent of § 4–4–215(d) and contrary to the generally recognized interpretation of the pertinent provisions of the Uniform Commercial Code, we decline to follow it and thus reach a contrary result here.

■ The Uniform Commercial Code requires strict compliance with the midnight deadline even if the item is not properly payable. This rule promotes efficiency, certainty, and finality in the national banking system. Moreover, the payor bank is in the best position to know the status of its depositor's account. Placing the loss on the payor bank will facilitate the use of the check as a medium of exchange and will force the one who can most cheaply avoid the loss to do so. *American National Bank & Trust Co. v. Central Bank*, 132 B.R. 171 (D.Colo.1991).

■ Here, it is uncontested that payor bank's deadline was midnight of March 18, 1997, and that the check was not returned until March 25, 1997. The *Mercantile* court failed to consider the combined effect of the midnight deadline rule and § 4–4–215(a)(3), C.R.S.1998. As noted above, under that statutory provision, if a collecting bank receives a settlement for an item which becomes final, any provisional credit given for the item in an account with its customer becomes final. Here, the payor bank failed to return the item before its midnight deadline and unless it returned the item or gave notification of the fact "within a reasonable time," as provided by § 4-4-214(a), the provisional settlement became final.

■ We conclude that under the clear language of § 4–4–215(a)(3), C.R.S.1998, final settlement occurs when an item is deemed "finally paid" as a result of the payor bank's failure to revoke a provisional settlement. Thus, when a payor bank becomes "accountable" on a check, the settlement becomes final and the collecting bank's right to charge-back against its depositor's account is terminated. *See* § 4–4–214(a), C.R.S.1998.

The following pertinent analysis appears in 5 W. Hawkland, J.F. Leary & R. Alderman, *Uniform Commercial Code Series* § 4–213:8 (1984):

Section 4–201 [§ 4–4–201, C.R.S.1998] states the general rule that a collecting bank is an agent or subagent of the owner of the item and any settlement given for the item is presumed to be provisional. Subsection 4–213(3) [§ 4–4–215(d), C.R.S. 1998] ... makes any provisional settlement given by the collecting bank final, and the collecting bank accountable, when the settlement received by the collecting bank is or becomes final. At that time, the relationship between the collecting bank and its customer changes from one of agent-principal to debtor-creditor. It should also be remembered that any right of charge-back or refund ceases upon receipt of final payment.

For example, suppose customer deposits a check in depositary bank and receives a provisional credit in his checking account. Depositary bank then forwards the check to the presenting bank through the local clearinghouse and receives a provisional credit from presenting bank. Presenting bank presents the check through the clearinghouse and is given a provisional credit, which then becomes final through the payor bank's inaction pursuant to subsection

4–213(1)(d) [§ 4–4–215(a)(3), C.R.S.1998]. At that time all provisional credits down the line become final and the collecting banks are accountable to their customers. At the same time, the banks lose the right to charge back or obtain a refund under Section 4–212 [4–4–214, C.R.S.1998]. The depositary bank, no longer an agent for the depositor, is instead a creditor and therefore indebted to the depositor for the amount of the item.

Final payment "firms up all of the provisional credits made in the collection process and makes each collecting bank accountable to its customer for the amount of the item. The relationship between the depositary bank and its customer then changes, from one of agency-principal to debtor-creditor." 5 W. Hawkland, J.F. Leary & R. Alderman, *supra*, at § 4–213:1. *See also* Trevalio, *Now You Have It, Now You Don't: The Depository Bank's Rights of Charge–Back and Set–Off*, 30 Ariz. L.Rev. 719 (1988) (criticizing the analysis and holding in *Mercantile Bank & Trust Co. v. Hunter, supra* ).

Our conclusion is supported by decisions in other jurisdictions. In *Fromer Distributors, Inc. v. Bankers Trust Co.*, 36 A.D.2d 840, 321 N.Y.S.2d 428 (1971), the court held that once payment became final because payor bank had missed its midnight deadline, the payor bank no longer had the right to dishonor the check. Consequently, the collecting bank had no right to accept the late return of the check or charge-back the amount of the check against its depositor's account.

Similarly, in *North Carolina National Bank v. Harwell*, 38 N.C.App. 190, 247 S.E.2d 720 (1978), the court held that a collecting bank retained its right to charge-back when the payor bank had sent notice of dishonor before its midnight deadline. However, the court also indicated that had the payor bank missed its midnight deadline, the provisional settlement would have become final and the collecting bank would have been precluded from charging-back the item to its customer.

Accordingly, the summary judgment in favor of FirstBank is not sustainable under the provisions of the Uniform Commercial Code.

## II.

■ FirstBank argues that even if the statutes and the *Mercantile* case did not allow it to charge-back the credit for the returned item, it nevertheless had a contractual right to do so by the terms of its deposit account agreement with the Trust. We disagree.

The pertinent terms of that agreement provided:

> In receiving items for deposit and collection, we act only as your collecting agent. We do not assume any responsibility beyond the exercise of ordinary care. We are not responsible for items lost during the collection process unless the loss was caused by our failure to exercise ordinary care. *Credit for any items which are deposited will be provisional only and subject to final payment. A credit resulting from any item that is returned unpaid may be charged back against your account.* (emphasis added)

■ Provisions of the Uniform Commercial Code may be varied by agreement. Section 4–4–103(a), C.R.S.1998, states:

> The effect of the provisions of this article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure. However, the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.

Although a general agreement between the depositary bank and its customer is within the meaning of an "agreement" under § 4–4–103(1), C.R.S.1998, the agreement here did not change FirstBank's midnight deadline, nor did it relieve FirstBank from possible liability. The agreement specifically states that credit remained provisional and "subject to final payment."

However, here the payor bank missed its midnight deadline and the check will be deemed finally paid unless it is shown that it

was returned or that notification of the facts was given within a reasonable time, as provided in §4-4-214(a). Whether the return or notification was effected within a reasonable time is a factual issue remaining to be resolved.

We thus conclude that the trial court erred in entering summary judgment in favor of FirstBank.

Accordingly, the judgment is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Judge CRISWELL and Judge PLANK concur.