**FERGUSON ENTERPRISES, INC., Appellant,**

v.

**MAIN SUPPLY, INC., and Bank of Danville, Appellees.**

No. 92–CA–0884–MR.

Court of Appeals of Kentucky.

Feb. 19, 1993.

Rehearing Denied April 30, 1993.

Discretionary Review Denied by Supreme Court Feb. 16, 1994.

Bernard F. Lovely, Richard A. Whitaker, Vimont & Wills, Lexington, for appellant.

E. David Marshall, Lexington, for appellee/Main Supply, Inc.

James William Barnett, Danville, for appellee/Bank of Danville.

Before HOWERTON, JOHNSON and MILLER, JJ.

MILLER, Judge:

Ferguson Enterprises, Inc. (Ferguson), brings this appeal from an order of the Boyle Circuit Court entered March 16, 1992. We reverse and remand.

On July 5, 1991, Ferguson obtained a judgment against appellee Main Supply, Inc. (Main Supply), in the amount of $34,631.18. To enforce this judgment, an Order of Garnishment was served upon appellee Bank of Danville (bank) on July 24, 1991. Kentucky Revised Statute (KRS) 425.501 et seq. On August 7, 1991, the bank submitted to the Boyle Circuit Court an affidavit and answer indicating there were no funds available for the garnishment lien's attachment. Through additional correspondence, it was discovered on July 24, 1991 (the date the Order of Garnishment was received by the bank), that Main Supply's account showed a balance of $13,206.87. Notwithstanding this balance, the bank indicated that it deemed a loan to Main Supply as being in default, thus entitling it to the account balance by reason of a security interest lien or setoff. Thereafter, Ferguson filed a motion in the Boyle Circuit Court for an order compelling payment of funds by garnishee. On March 16, 1992, the circuit court denied Ferguson's motion. This appeal follows.

 This case presents a simple question as to what requirements a bank must meet in order to effectuate a setoff from a depositor's account. Under Kentucky law, the relationship of a bank and a depositor is that of debtor and creditor. *See Dorman v. Adams,* 247 Ky. 678, 57 S.W.2d 534 (1933). The bank is the debtor; the depositor is the creditor. A depositor's funds become a part of the bank's assets. *See Scoggan v. Dillon,* Ky., 252 S.W.2d 35 (1952). When a depositor becomes indebted to a bank and defaults on the indebtedness, it is a well-established rule of law that the bank may exercise a right of setoff to enforce collection of indebtedness owed to it by a depositor. *See American Bank & Trust Co. v. Shouse & Burrus,* Ky. App., 648 S.W.2d 540 (1983). Many authorities refer to the bank's right as that of a lien upon the deposit account, but, strictly speaking, such is erroneous. A bank cannot possibly have a lien upon its own assets. 10 Am.Jur.2d *Banks* § 666 et seq. (1963). It is logical, therefore, that the Uniform Commercial Code (U.C.C.) § 9–104(i), (*l*), codified in this Commonwealth as Kentucky Revised Statute (KRS) 355.9–104(9), (12), excludes

setoffs and transfers of an interest in deposit accounts from secured transactions.

In view of the foregoing, if the bank's interest in Main Supply's account is to be adjudged superior to that of Ferguson's garnishment lien, it must emanate from the right of setoff and not from any notion relating to a security interest lien. Therefore, in order to settle this controversy between the bank and Ferguson, we must determine whether the bank's right to setoff or the garnishment lien has priority as to Main Supply's account. In this regard, the Uniform Commercial Code is helpful. Although, as aforesaid, it does not give the bank a security interest in a depositor's account, it does address the issue of priority in regard to setoffs and competing claims to a bank account. U.C.C. 4–303 (codified as KRS 355.4–303) provides, in relevant part, as follows:

(1) Any knowledge, notice or stop-order received by, legal process served upon or setoff exercised by a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if the knowledge, notice, stop-order or legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the bank has done any of the following:

(a) accepted or certified the item[.]

It is plain that under this statute a bank cannot charge a customer's account with a setoff after accepting a garnishment thereon—the same being a legal process. Following U.C.C. 4–303(1)(a), in order to determine whose interest is superior, it must be initially determined who was first in time: the bank's acceptance of the garnishment lien or the exercise of the right to setoff. It is undisputed that the garnishment was received by the bank and simultaneously attached Main Supply's account on July 24, 1991. It may be that at this time the Main Supply loan was delinquent or even in default. This, however, is immaterial. Priority is not predicated upon either delinquency in loan payment or

default, but rather upon the effectuation of a setoff. The issue before us is to determine factually and legally when the bank's setoff occurred. The exact steps necessary to effectuate a setoff present a case of first impression in Kentucky.

In *Baker v. National City Bank of Cleveland*, 511 F.2d 1016 (6th Cir.1975), the Court, applying Ohio law, recognized the uniqueness of this issue and held that affirmative steps must be taken to effect an intended setoff. The Court stated that "the act of setoff is not complete until three steps have been taken: (1) the decision to exercise the right, (2) some action which accomplishes the setoff and (3) some record which evidences that the right of setoff has been exercised." *Id.* at 1018 (followed in *State Bank of Fraser v. United States*, 861 F.2d 954 (6th Cir.1988)). The Court cited the Supreme Court of the United States [*Studley v. Boylston Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)] as observing "[t]hat right is constantly exercised by business men in *making book entries* whereby one mutual debt is applied against another." *Baker*, at 1017. (Emphasis added.)

■ The state of Ohio had adopted U.C.C. § 4–303 which we, likewise, have adopted and codified as KRS 355.4–303. Considering the language in § 4–303 and the Code's policy of evidencing internal banking transactions involving adverse interest, the Court concluded that setoff does not occur automatically, but requires some affirmative act by the bank. The Court noted that "[w]hile there is no requirement that the actual cross entries to reflect off setting debits and credits be made before the right of setoff is exercised, when the time the setoff is put in issue, it is incumbent upon the bank asserting the setoff to produce evidence of the time that the setoff was 'actually made.' " *Baker*, at 1018. Finally, the Court opined that "[i]t would be unrealistic to hold that mere intramural declarations between employees of a bank, accompanied by no affirmative acts and no steps to record the transaction, are sufficient to effectuate a setoff." *Id.* at 1019. We are persuaded by the reasoning of this decision and see no reason why it should not be applicable to the case we are bound to

decide. Therefore, we hold that the appellee bank has the burden of proof as to when the setoff actually occurred, which must be evidenced by intent, by affirmative acts, and by some record that the right of setoff has been exercised.

■ Appellee bank contends that on July 17, Main Supply's account was "frozen," that default occurred on the demand note, and that the right of setoff was exercised. However, the evidence illustrates that four withdrawals from the account were allowed after July 17. This indicates that the account, indeed, was not frozen. Furthermore, Main Supply had continually been late on loan payments and had not incurred a freezing of its account. Missing from the record is any direct evidence illustrating an affirmative act by the bank to effectuate the setoff before August 1. In addition, there is even a question as to whether the bank, in fact, possessed the intent to set off the account before that date. In correspondence to Ferguson's attorney, Paul Hibberd, vice president of the bank, stated that "[o]n August 1, 1991, Main Supply, Inc., had failed to make its July payment, and *at that time* we further deemed our loan to be in default, because of the location and quantity of inventory being in jeopardy. We therefore put Main Supply, Inc. on notice that we deemed the loan to be in default." (Emphasis added.) This language makes clear that the bank did not consider the loan to be in default until August 1 and at that time notified Main Supply. Therefore, there could not have been an intention to set off the account before that date.

Viewing the evidence most favorably to the bank, we must conclude that setoff was intended and that affirmative acts to effectuate same occurred, at the earliest, on August 1, 1991—seven days after the garnishment lien attached. The bank, therefore, failed to meet its burden of proof. We should, indeed, stress that no legitimate evidence was introduced that on or before July 24 the bank intended to set off Ferguson's account; that there were affirmative acts to effectuate the setoff; and that the exercise of this right was recorded. It is clear that Ferguson's garnishment lien has priority due to it being

first in time. U.C.C. § 4–303, codified as KRS 355.4–303. Ferguson is thus entitled to $13,206.87, representing the amount in the account at the time the garnishment lien attached on July 24, 1991.

For the foregoing reasons, the order of the circuit court is reversed, and this cause is remanded for proceedings consistent with this opinion.

All concur.