107 F.3d 871
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
McMAHAN & COMPANY, Plaintiff-Appellant,
v.
PO FOLKS, INC. and MONTGOMERY Traders Bank & Trust Company,
Defendants-Appellees.
 No. 96-5237.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1997.
 
 On Appeal from the United States District Court for the Eastern District of Kentucky, No. 95-00342, Karl S. Forester, Judge.
 E.D.Ky.
 REVERSED.
 Before: MERRITT, KENNEDY, and GUY, Circuit Judges.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiff, McMahan & Company, appeals from a judgment in favor of defendants, Po Folks, Inc. and Montgomery Traders Bank & Trust Company (the Bank), in this action to enforce a judgment. On appeal, plaintiff challenges the district court's denial of plaintiff's motions for writs of execution against property of Po Folks held by the Bank and for an order of contempt against the Bank. Plaintiff also appeals the court's denial of plaintiff's motion to temporarily restrain transfers from Po Folks' accounts held at the Bank. Plaintiff argues that the district court erred in finding that the Bank had not violated its garnishment orders. Alternatively, plaintiff seeks to conduct discovery on the issue. Plaintiff also challenges the district court's order that plaintiff pay the court-appointed expert's fees. Finally, plaintiff appeals the district court's denial of plaintiff's motion for relief pursuant to Fed.R.Civ.P. 60(b).
 
 
 2
 Based upon our review of the record and the arguments presented on appeal, we find that plaintiff's argument that it is entitled to all deposits made on the day of garnishment, regardless of whether plaintiff's account has a negative balance, is without merit. We further determine, however, that plaintiff should have been allowed the opportunity to conduct additional discovery on the issue of whether plaintiff's accounts had a negative balance at the time the garnishment orders were received. Therefore, we reverse and remand for further proceedings consistent with this opinion.
 
 I.
 
 3
 On February 28, 1995, plaintiff obtained a default judgment in the amount of $185,744.15 plus interest against Po Folks. The judgment, which was entered in the federal district court in Delaware, was registered in the federal district court in Kentucky.
 
 
 4
 Plaintiff attempted to enforce the judgment through a series of garnishment orders issued to the Bank. Upon receipt of these orders, the Bank would review Po Folks' accounts to determine whether any of the accounts had positive balances. Based on these reviews, on one occasion, the Bank forwarded $6,030.16 to plaintiff, on another occasion $51.03, and on the remaining occasions indicated that it did not hold property of or possess funds owed to Po Folks.
 
 
 5
 In conducting discovery in aid of its enforcement efforts, see Fed.R.Civ.P. 69(a), plaintiff reviewed Bank records concerning Po Folks' general checking account. These records revealed that numerous deposits had been made during the period in which the orders had been issued. At the same time, the Bank paid out sums in excess of these amounts, causing the account to run at a substantial deficit. In addition, the records revealed that certain sums were transferred into and out of the general account into related accounts.
 
 
 6
 On August 2, 1995, plaintiff filed its motions for writs of execution and for contempt. At a hearing on these motions held on August 4, 1995, the court ordered that a certified public accountant be appointed to examine Bank records pertaining to Po Folks and to file a report with the court. The court further ordered that the costs of the court-appointed expert be paid by the non-prevailing party.
 
 
 7
 Later that month, the court and the parties agreed to appoint DeWitt T. Hisle, C.P.A., as the court-appointed expert. In naming Hisle as expert, the court ordered that Hisle "review the bank statements during the relevant time period, including deposits made to the account and checks paid out of the account, to determine the balance in the account at the time [the Bank] received the garnishment orders." (App. 13.)
 
 
 8
 Two months later, Hisle reported his findings to the court. He noted that Po Folks maintained a general account, an insurance account, a credit card account, a payroll account, and an Mts-01 account with the Bank. Amounts remaining in the insurance, credit card, and Mts-01 accounts at the end of the banking day were transferred to the general account. A transfer was made each day from the general account to the payroll account to cover any overdraft created from clearing checks the previous day.
 
 
 9
 Based on his review of the Bank statements for the general account, Hisle concluded that from April 3, 1995, the date of the first garnishment order, until June 15, 1995, the day following receipt of the last garnishment order, the general account was overdrawn at the end of each day.
 
 
 10
 Upon receipt of the Hisle Report, plaintiff included the report in a supplemental memorandum to the court in support of its pending motions. The Bank filed a supplemental memorandum in opposition and included the affidavits of the two Bank employees who had been responsible for reviewing Po Folks' accounts upon receipt of the garnishment orders. In these affidavits the employees stated that "on the date and time of receipt of each Garnishment Order, all the accounts of Po Folks, Inc. at Montgomery & Traders Bank reviewed by me either had a negative balance or a zero balance, except two occasions which were paid." (App. 134; id. at 137.)
 
 
 11
 The district court, in turn, ordered the parties to file "contemporaneous briefs on the issue of the scope of [the Bank's] duties with regard to the garnishment orders, and whether, based on Mr. Hisle's Report, [the Bank] violated its duties." (App. 19.)
 
 
 12
 On January 22, 1996, the court rendered its decision in favor of defendants in reliance upon the Bank affidavits. Plaintiff moved for relief from the order arguing that the Bank violated the garnishment orders and alternatively sought to conduct discovery on the issue. The court denied the motion.
 
 II.
 
 13
 This court reviews questions of law de novo, see Featsent v. City of Youngstown, 70 F.3d 900, 903 (6th Cir.1995), and questions of fact under the clearly erroneous standard, FED.R.CIV.P. 52(a); see Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).
 
 
 14
 Plaintiff first argues that the district court did not apply the correct legal standard in determining whether the Bank violated the garnishment orders. Plaintiff maintains that all deposits received by a bank on the day a garnishment order is received constitute garnishable indebtedness, regardless of whether the judgment debtor's accounts show zero or negative balances. In contrast, the Bank contends that a court should look at the balance in the judgment debtor's accounts in determining whether a garnishee was "possessed of any property of the judgment debtor, or was indebted to him," KY.REV.STAT.ANN. § 425.501(5), at the time a garnishment order was received. We conclude that the court did not err in holding that the Bank did not violate the garnishment orders by looking to the net balance in the account at the time it was served.
 
 
 15
 Federal Rule of Civil Procedure 69 provides that:
 
 
 16
 Process to enforce a judgment for the payment of money shall be a writ of execution.... The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought....
 
 
 17
 Thus, the district court correctly applied Kentucky law governing proceedings for obtaining an order of garnishment. Kentucky statutory law provides:
 
 
 18
 If the court finds that the garnishee was, at the time of service of the order upon him, possessed of any property of the judgment debtor, or was indebted to him, and the property or debt is not exempt from execution, the court shall order the property or the proceeds of the debt applied upon the judgment.
 
 
 19
 KY.REV.STAT.ANN. § 425.501(5). The attorney general of Kentucky has explained that garnishment under § 425.501(5) does not operate in the future. Ky.Op.Att'y Gen. 61-909 (1961). Furthermore, an attaching creditor has no greater right in the property attached than the debtor at the time of attachment. Id. (citing Batesville Casket Co. v. Fields, 155 S.W.2d 743 (1941)).
 
 
 20
 Under Kentucky law, the relationship between a bank and a depositor is that of debtor and creditor. Ferguson Enters., Inc. v. Main Supply, Inc., 868 S.W.2d 98, 99 (Ky.Ct.App.1993). The bank is the debtor and the depositor is the creditor. Id. A depositor's funds become a part of the bank's assets. Id. Thus, deposits constitute indebtedness garnishable under § 425.501.
 
 
 21
 In this case, however, the Bank had permitted Po Folks to make substantial overdrafts for some period of time.[1] An overdraft arises when a bank customer draws more money than is standing to his credit in his account. An overdraft of an account amounts to a loan of money to the extent the account is overdrawn; the customer thus becomes the debtor and the bank the creditor. Dalton v. First Nat'l Bank of Grayson, 712 S.W.2d 954, 957 (Ky.Ct.App.1986). In other words, to the extent overdrafts are allowed, the creditor-debtor relationship established when the customer deposits money with a bank is reversed. Therefore, the Bank is correct that to the extent an overdraft exists in a customer's account, the Bank is not indebted to that customer but, rather, the customer is indebted to the Bank.
 
 
 22
 Plaintiff argues, however, that regardless of whether Po Folks' accounts showed a negative balance, the Bank was indebted to Po Folks as to all deposits received on the days in which the garnishment orders were served, and the only issue is whether the Bank's right to offset the checks to the deposit was superior to plaintiff's garnishment order. Plaintiff further maintains that the Bank had no security interest in or right to offset the deposits made on the days garnishment orders were received. Indeed, the Bank agreed in a memorandum to the district court that it did not have a security interest in any of Po Folks' accounts[2] and that it did not exercise any right of set off. While the Bank apparently is correct that it did not set off the "line of credit" note, its concession does not relate to its treatment of the negative balance in the checking account.
 
 
 23
 By overdrawing its account, a depositor implies its promise to repay the bank the amount loaned. See id. Thus, when a depositor who has made overdrafts makes a general deposit, the bank may apply it to the overdrafts immediately. Such an action is essentially a manifestation of the bank's right to set off deposits against a matured indebtedness of the depositor. "When a depositor becomes indebted to a bank and defaults on the indebtedness, it is a well-established rule of law that the bank may exercise a right of setoff to enforce collection of indebtedness owed to it by a depositor." Ferguson Enters., Inc., 868 S.W.2d at 99. Plaintiff maintains that the overdraft debt was not due.[3] This is true with regard to the "line of credit note," but the overdraft was a loan due on demand. See Hennessy Bros. & Evans Co. v. Memphis Nat'l Bank, 129 F. 557, 559 (6th Cir.1904). Therefore, the Bank had the right to apply the deposits to Po Folks' indebtedness to the Bank.
 
 
 24
 The record here is inadequate, however, to determine whether the account had a negative balance at the time the garnishments were served. On May 5, 1995, the Hisle Report shows that at some point in the day, the general account may have had a positive balance. The affidavits of the Bank's employees provide the support for the court's decision, since they state that at the time each garnishment order was received the account showed a negative balance. The affidavits, however, lack relevant information regarding the Bank's procedures and how the Bank employees determined the balance of indebtedness. The Bank concedes that if there were a positive balance in the account it would have been required to respond to the garnishment order.
 
 
 25
 Plaintiff asserts that the insurance, credit card, payroll, and Mts-01 accounts all had positive balances totaling $113,541.75 according to the Hisle Report and that the Bank violated the garnishment orders by not paying plaintiff the monies in those accounts. The district court found that all of the Po Folks' accounts had a negative or zero balance on the days the garnishment orders were received, except for the two occasions when the Bank forwarded Po Folks' funds to plaintiff. Plaintiff does not, however, specify the portions of the Hisle Report upon which it relies. The Hisle Report states: "Any amounts remaining in the Insurance Account, Credit Card Account and Mts-01 Account at the end of a banking day were transferred to the General Account. A transfer was made each day from the General Account to the Payroll Account to cover the overdraft created from clearing checks the previous day." (App. at 124.) The Hisle Report also shows the amount of money transferred to the general account from other Po Folks' accounts on the days in which garnishment orders were received. The affidavits, however, stated that when the garnishment orders were received, none of the Po Folks' accounts had a positive balance. The Hisle Report does not contradict these affidavits, but the record is not entirely clear about the status of these four non-general accounts. They simply may be "sub-accounts" of the general account, so the Bank may have balanced all of the credits to and debits from all of Po Folks' accounts and determined that Po Folks was in fact indebted to the Bank through a negative balance. Further discovery appears necessary to provide more information about these accounts.
 
 
 26
 Because we conclude additional discovery is warranted in this matter, we REVERSE. The district court denied plaintiff's request for discovery contained in plaintiff's Rule 60(b) motion. Plaintiff specifically seeks to depose the Bank employees who submitted affidavits. Plaintiff contends that it failed to depose these employees sooner in reliance upon the court's indications that its determination would be based upon the Hisle Report. Under these circumstances, we conclude that the matter be REMANDED for further discovery.[4]
 
 
 27
 In addition, since the prevailing party cannot be determined at this time, we VACATE the district court's order regarding payment of expert fees.
 
 
 28
 REVERSED and REMANDED for further proceedings consistent with this opinion.[5]
 
 
 29
 MERRITT, Circuit Judge, concurring in part and dissenting in part.
 
 
 30
 I concur in the result reached by the Court reversing and remanding. I would allow the plaintiffs through discovery to prove what I believe is their contention that the bank was manipulating its accounts to maintain a negative balance anytime the garnishment became payable. I understand that plaintiffs contend that the bank would give priority to the clearance of checks through the customer's account in order to create overdrafts against which it would offset the deposits so as to continue to deny discharge of the garnishment. (Brief of appellant, pp. 6-7, 27 and J.A. 237-244). The plaintiff contends that the defendant had a number of accounts with positive balances which were transferred to the general account against which the bank would create a deficit by debiting checks, thereby offsetting negative balances designed to defeat the interest of the judgment creditor. (Brief of appellant, p. 27). If plaintiff can prove such a course of conduct through discovery, it should be able to recover against the bank. My view is that if during the business day on which a garnishment was served the customer's accounts would have shown a net positive balance in the ordinary course of business, then the plaintiff should have been entitled to recover that balance. It is unclear to me from the Court's opinion exactly what should be the scope of discovery in the District Court or whether the bank should be liable if its employees delayed posting deposits during a business day in order to defeat plaintiff's garnishments.
 
 
 
 [1]
 According to the Hisle Report, the Bank started allowing Po Folks to overdraw its general account in August 1994, and the account had "been overdrawn at the end of almost every day since then." (App. 125.)
 
 
 [2]
 Under Kentucky law, a bank does not have a security interest in a depositor's account. See Ferguson Enters., Inc., 868 S.W.2d at 99
 
 
 [3]
 Plaintiff asserts that the Hisle Report establishes that repayment of the overdrafts was not due until July 23, 1995, under the terms of the line of credit note. The Hisle Report, however, does not state that the line of credit was for the overdrafts
 
 
 [4]
 It is not our intent necessarily to limit discovery to the taking of the deposition of affiants. We leave the nature and scope of additional discovery to the sound discretion of the district judge
 
 
 [5]
 Judge Merritt's concurrence makes necessary this additional comment. Any intentional manipulation by the bank to create a negative balance and defeat the garnishment would be improper and allow recovery by the plaintiff. We have indicated, however, that in the ordinary course of business "when a depositor who has made overdrafts makes a general deposit, the bank may apply it to the overdrafts immediately." Also, under Kentucky's "snapshot" rule, the account balance is to be determined as of the time the garnishment is served