**Cindy DEAL, Appellant**

v.

**FIRST AND FARMERS NATIONAL BANK, INC., Appellee**

NO. 2015–CA–001688–MR

Court of Appeals of Kentucky.

MARCH 31, 2017; 10:00 A.M.

BRIEF AND ORAL ARGUMENT FOR APPELLANT: R. Aaron Hostettler, London, Kentucky

BRIEF AND ORAL ARGUMENT FOR APPELLEE: John S. Gillum, Somerset, Kentucky

BEFORE: JONES, STUMBO, AND TAYLOR, JUDGES.

OPINION

JONES, JUDGE:

Appellant, Cindy Deal, appeals the Pulaski Circuit Court's order granting summary judgment in favor of Appellee, First and Farmers National Bank, Inc. Having reviewed the record in conjunction with the applicable legal authorities, we affirm.

## I. BACKGROUND

Cindy Deal, the Appellant, obtained a money judgment in the amount of $64,600, against her ex-husband, James Deal, on or about February 24, 2012. *See Cindy Deal v. Wilson & Deal 2-Way, et al., Pulaski Circuit Court, Div. II*, Civil Action No. 10–CI–00838. In an attempt to collect that judgment, Cindy's attorney took a post-judgment deposition of James during which James testified that he maintained a deposit account and thought he also probably had some certificates of deposit ("CDs") with First and Farmers National Bank, Inc. (the "Bank").[1]

Based on James's testimony, Cindy issued a non-wage garnishment order to the Bank on May 11, 2012. The Bank received the Garnishment Order on May 16, 2012, and filed its answer using the AOC–150.1 form[2] enclosed with the garnishment order. In pertinent part, the Bank answered as follows:

1. The name of the Judgment Debtor is <u>JAMES DEAL</u>.

2. At the time of the service of this order, the Garnishee herein is indebted

---

1. A review of James's deposition testimony indicates that he was somewhat unsure whether his CDs were at First and Farmers National Bank. He stated that he had held them for "ten years, maybe five" At first, James testified that the CDs were at Citizens Bank, but later changed his mind and said that they were "probably" at First and Farm-ers. With respect to his checking account, James was clear that only his social security and veteran's benefits has been deposited into the account.

2. One served with an Order of Garnishment may use the form to respond, but it is not mandatory.

to the Judgement Debtor or holds money belonging to the Judgment Debtor in the amount of $ <u>NONE</u>.

3. Other property belonging to the Judgment Debtor and held by me is as follows: <u>NONE</u>.

4. I, or I on behalf of the Garnishee herein, state that there is no other money, property or other evidence of debt in my possession that belongs to the Judgment Debtor.

5. I, or I on behalf of the Garnishee, have FORWARDED TO THE ATTORNEY named on the reverse side the amount of money so held by me to the extent of the amount due plus costs as shown on the reverse.

THE AMOUNT FORWARDED IS $ <u>NONE</u>.

6. If I, or I on behalf of the Garnishee, hold property (listed above) other .than money which I am unable to forward, I hereby disclose (in Paragraph 3 above) such property and will hold and safely keep such property pending further Order of the Court.

7. In addition, I have sent the original of this Answer and the Order on the reverse to the Court, and copies to the attorney named on the reverse and the Judgment Debtor.

Puzzled by the inconsistencies between the Bank's answers to the garnishment order and James's testimony, Cindy's attorney, Aaron Hostettler, contacted the Bank's vice president, Alan Houck, via email on May 22, 2012. Mr. Hostettler explained why he believed James did have accounts with the Bank and requested that the Bank investigate the matter further, stating that either James had committed perjury or the Bank had failed to reasonably inquire into James's holdings at the Bank.[3] Mr. Hostettler then sent two additional emails to the Bank's representatives, in which he stated that he needed an explanation as to what happened to the accounts and would be setting times for depositions. Mr. Houck responded to Mr. Hostettler's original email the following day. In pertinent part, his email stated that:

> [U]nfortunately, our answer still remains none to the bank holding any *garnishable* funds or assets of the named debtor. Is it possible that Mr. Deal was confused and/or gave the wrong name of the bank holding his CD's? Or, could the deposits have been held under another name or tax id # ?
>
> · · ·
>
> Is it possible to review the deposition questions and answers and make sure the name of the bank holding the CD accounts is truly First & Farmers National Bank?

(emphasis added).

Two more emails from Mr. Hostettler to representatives at the Bank followed, to which he received no response. Mr. Hostettler then contacted counsel for James seeking an explanation as to what had happened to James's accounts. No explanation was given. For reasons that are not entirely clear from the record, Cindy did not seek any formal discovery from the Bank, such as the deposition her former co-counsel had suggested.

---

**3.** Co-counsel who had also represented Cindy in her case against James sent Mr. Hostettler an email indicating that she was unsure if the Bank could give him any additional information. She suggested that he depose someone from the Bank to find out what had happened to the accounts James testified the Bank held. This counsel then withdrew from representation of Cindy due to a conflict of interest because she also served as counsel for the Bank on various unrelated issues.

Instead, believing that James had perjured himself, Cindy moved the court to hold James in contempt on June 18, 2012. In July of 2012, the Pulaski Circuit Court held contempt hearings, which culminated in the court indicating that it would hold James in contempt and require him to submit to another deposition. At some point before the order was entered, James's attorney provided Mr. Hostettler with copies of James's bank statements. These statements indicated that James did, in fact, have a deposit account with a positive account balance at the Bank. The statements also indicated, however, that all funds in James's account at the Bank were in the form of veteran's or Social Security benefits, which federal law exempts from garnishment.

Upon discovering that James did have an account at the Bank, Mr. Hostettler reinitiated email correspondence with Mr. Houck and other Bank representatives seeking an explanation for what he felt was an "egregious misrepresentation" by the Bank. Mr. Houck responded that when the Bank received the garnishment order the "compliance folks" advised the Bank that the funds in James's account were non-garnishible and that the Bank was required to respond to the garnishment order in the way that it did for "confidentiality reasons." Further, Mr. Houck emphasized that in all of his emails to Mr. Hostettler he had explicitly stated that James did not have *garnishable* funds deposited with the Bank, not that he had no funds with the Bank. Cindy then filed a motion to hold the Bank in contempt, which was overruled. Even though the trial court overruled Cindy's contempt motion, it instructed that she could file a separate action against the Bank, if she so desired.

On January 23, 2013, Cindy filed the present action alleging that the Bank's answer to the garnishment order contained false statements of material fact and that subsequent communications from the Bank either contained further false statements of material fact or made material and substantial omissions of material fact on which Cindy had relied to her detriment. The complaint brought allegations under KRS [4] 425.526, which creates a cause of action for a garnishee's failure to make a satisfactory disclosure in response to a garnishment order. In the alternative, Cindy asserted common law claims of fraudulent misrepresentation and/or fraudulent omissions of material fact. Cindy claimed that the Bank was liable to her for the entire amount of the judgment she held against James, attorney's fees, and punitive damages.

The Bank moved for summary judgment on the basis that it could not be liable to Cindy as a matter of law because newly enacted federal regulations, which it had complied with, preempted the state law claims that Cindy had brought against it. Specifically, the Bank pointed to the fact that 31 C.F.R.[5] § 212 mandates that if a financial institution finds that exempt funds were deposited into an account subject to an order of garnishment, the financial institution must ensure that the account holder has access to the exempt funds. As such, the Bank argued, it had no way to answer the garnishment order in a way that would comply with federal regulations. The circuit court concluded that the Bank could have simultaneously complied with both state and federal authorities by informing Cindy that James had an account with funds in it at the Bank, but that those funds could not be turned over because they were exempt from garnish-

4. Kentucky Revised Statutes.

5. Code of Federal Regulations.

ment under federal law. Even though the circuit court determined that the Bank's answer was not technically in compliance with the state garnishment statutes, it held that Cindy could not prove that the Bank's actions damaged her because none of the funds in the Bank's possession were garnishable under federal law. This appeal by Cindy followed.

## II. Standard of Review

■ Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR [6] 56.03. In hearing a motion for summary judgment, the court examines evidentiary matter not to decide any issues of fact, but to determine if a real issue exists.

■ All doubts must be resolved "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in [that party's] favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Thus, summary judgment is only proper "where the movant shows that the adverse party cannot prevail under any circumstances." *Id.* at 479. This standard has been interpreted in a practical sense, not in an absolute sense. *See Perkins v. Hausladen*, 828 S.W.2d 652 (Ky. 1992). "Because summary judgments involve no fact finding, this Court will review the circuit court's decision *de novo*." *3D Enters. Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky. 2005).

## III. Analysis

Before delving into the specifics of Cindy's claims against the Bank, we will briefly review the applicable state and federal statutes as they pertain to garnishments.

### A. State Law

■ "Any person in whose favor a final judgment in personam has been entered in any court of record of this state may … obtain an order of garnishment to be served in accordance with the Rules of Civil Procedure." KRS 425.501(1). "The order of garnishment shall be served on the persons named as garnishees …." KRS 425.501(3). "If the court finds that the garnishee was, at the time of service of the order upon him, possessed of any property of the judgment debtor, or was indebted to him, and the property or debt is not exempt from execution, the court shall order the property or the proceeds of the debt applied upon the judgment." [7] KRS 425.501(5). The burden of claiming and establishing that the property held by garnishee is exempt falls on the judgment debtor. KRS 425.501(4). "The statutes do not confer standing on the garnishee to claim an exemption of the judgment debtor." *Cent. Supply of Virginia, Inc. v. Commonwealth Life Ins. Co.*, 787 S.W.2d 273, 274 (Ky. App. 1990).

Once served, a garnishee must appear and answer. *See* KRS 425.511 (1). The appearance may be in person or by way of an affidavit by the garnishee. *Id.* The garnishee must disclose "truly the sum owing by him to the defendant, whether due or not, and the property of the defendant in the possession or under the control of the

---

6. Kentucky Rules of Civil Procedure.

7. "Under Kentucky law, the relationship of a bank and a depositor is that of debtor and creditor." *Ferguson Enter., Inc. v. Main Sup-*

*ply, Inc.*, 868 S.W.2d 98, 99 (Ky. App. 1993). "The bank is the debtor; the depositor is the creditor." *Id.*

garnishee . . . ." *Id.* If the garnishee fails to answer, the court may "compel him to appear in person for examination, by process as in cases of contempt; or it may hear proof of any debt owing or property held by the garnishee to or for the defendant, and make such order in relation thereto as if what is so proved had appeared on the examination of the garnishee or officer." KRS 425.511(2).

█ If garnishee holds money owing to the defendant, he is required to comply with the provisions of KRS 425.516:

> The garnishee may pay the money owing to the defendant by him, not exceeding the plaintiff's claim and costs, to the sheriff having in his hands the order of attachment, or into the court . . . and to that extent he shall be discharged from liability to the defendant. He shall not be subjected to costs beyond those caused by his resistance of the claim against him; and, if he discloses the property of the defendant in his hands, or the true sum owing by him and delivers or pays the same to the sheriff, or according to the order of the court, he shall be allowed his costs.

*Id.* "The garnishee is discharged from liability to the judgment debtor upon compliance with the order of garnishment." *Cent. Supply of Virginia, Inc.*, 787 S.W.2d at 274.

Kentucky Rule of Civil Procedure 69.02 is also applicable. It provides:

> (1) Service of post-judgment orders of attachment or garnishment upon third-party garnishees, such as employers and financial institutions, shall be served as prescribed in Rule 4 or, at the option of the plaintiff, may be directed by the plaintiff to the garnishee by regular first class or certified mail, or may be personally served by any person authorized to serve a subpoena pursuant to Rule

> 45.03. Expenses shall be recoverable as costs.
>
> (2) Upon receiving a post-judgment order of garnishment, the garnishee shall answer within the time required by Rule 12.01, and unless otherwise ordered by the court shall make payments directly to the attorney for the party in whose behalf the order of garnishment was issued. If such party has no attorney of record, as, for example, in the instance of a "small claim," payments by the garnishee shall be made to the clerk of the court.
>
> Except for child support arrearages, where wages are garnisheed, the attorney for the party in whose behalf the order of wage garnishment was issued, or the clerk of the court if such party has no attorney of record, shall safely hold the garnisheed funds in escrow for a period of fifteen (15) days from the issuance date of the employer's garnishment check. If the debtor files an objection within that period, the funds shall continue to be held until the court rules upon the objection. If an exemption is asserted and a hearing held, the attorney or clerk of the court shall disburse the garnisheed funds as ordered by the court. If no exemption is asserted the attorney or clerk of the court shall after the fifteen (15) day period disburse the funds to the party in whose behalf the order of garnishment was issued.

CR 69.02.

█ If the judgment creditor is dissatisfied with the garnishee's disclosure, she may bring an action against the garnishee. KRS 425.526; *Wade v. Poma Glass & Specialty Windows, Inc.*, 394 S.W.3d 886, 892 (Ky. 2012) ("If a garnishee fails to make a disclosure satisfactory to the judgment creditor, the creditor may bring an action against the garnishee by petition or

amended petition in the same manner."). Therein:

> the plaintiff may procure an order of attachment in the same manner, and the proceedings thereupon shall be the same, as is hereinbefore and hereinafter authorized concerning attachments—except that the plaintiff's affidavit shall state, in addition to the facts required to be stated in KRS 425.301(3), the sum which the defendant owes to the plaintiff's debtor; and the plaintiff shall not be entitled to attach for or recover more than that sum and costs nor more than the amount of the plaintiff's claim against his debtor and costs.

*Id.* The amount of recovery in such an action is limited to the amount of the original judgment plus costs and interest. *Lee v. Walston*, 8 Ky.L.Rptr. 129 (Ky. 1880) ("The question as to damages by reason of the garnishee will be settled should the appellants recover by a judgment for the debt, interest and their costs; this is all they can recover.").

### B. Federal Law

■ As a matter of federal law, most federal benefit payments, including Social Security benefit payments and Veterans' Administration benefit payments, are exempt from garnishment. Effective May 1, 2011, the Department of the Treasury promulgated certain rules to prevent encroachment on this exemption. *See* 31 C.F.R. § 212, *et seq.* The rules require a financial institution served with a garnishment order to first examine the order to ascertain whether a notice of right to garnish federal benefits is attached. 31 C.F.R. § 212.4. If such notice is not attached, the financial institution is to conduct an account review for a two month lookback period, 31 C.F.R. § 212.3, to determine whether during that time federal benefit payments have been deposited into the account. 31 C.F.R. § 212.5(b). The account review is to be conducted irrespective of whether the account contains other funds or has a co-owner. 31 C.F.R. § 212.5(d)(1)(2). If federal benefit payments have been deposited during the lookback period, the financial institution is directed to calculate the protected amount and ensure that the account holder has full and customary access to those funds. 31 C.F.R. § 212.6. These funds are to be "conclusively considered to be exempt from garnishment under law." 31 C.F.R. § 212.6(c). The remaining funds in the account shall be treated in conformity with the customary procedures for handling garnishment orders. 31 C.F.R. § 212.6(d). A prescribed notice of the review is to be sent to the account holder. 31 C.F.R. § 212.7.

The rules are expressly intended to preempt conflicting state and local laws or regulations. 31 C.F.R. § 212.9(1). "A State law or regulation is inconsistent with this part if it requires a financial institution to take actions or make disclosures that contradict or conflict with the requirements of this part or if a financial institution cannot comply with the State law or regulation without violating this part." *Id.* "State law is not inconsistent with the interagency regulation if it protects benefit payments in an account from being frozen or garnished at a higher protected amount than required under the regulation." *See* FRB,[8] *Consumer Compliance Handbook* (July 2016), 2017 WL 327402, n.8; *see also,* Margot F. Saunders & Johnson M. Tyler, *Past, Present and Future Threats to Federal Safety Net Benefits in Bank Accounts,* 16 N.C. Banking Inst. 43 (2012) ("State laws are preempted if they would stand in the way of the automatic, self-executing pro-

---

**8.** Federal Reserve Board

tection of federal benefits that the Interim Rule requires.").

### C. Interplay between State and Federal Law

 "The doctrine of federal preemption is derived from the supremacy clause of the United States Constitution, Article VI." *Wright v. Gen. Elec. Co.*, 242 S.W.3d 674, 678 (Ky. App. 2007). "The historic police powers of the state are not preempted in the absence of 'the clear and manifest purpose of Congress' to do so." *Niehoff v. Surgidev Corp.*, 950 S.W.2d 816, 820 (Ky. 1997) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). "The congressional purpose to preempt a state remedy may be determined in either of two ways. The first is whether the preemption is found in the express language of the statute." *Wright*, 242 S.W.3d at 678 (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). "The second is to find preemption implied from the structure and purpose of the statute." *Id.*

The express terms of the federal regulations provide that they preempt state garnishment law only if there is an actual conflict between the state law and the federal law. They provide that an actual conflict exists if the state law requires the financial institution to "take actions or make disclosures that contradict or conflict with the requirements of this part or if a financial institution cannot comply with the State law or regulation without violating this part." 31 C.F.R. § 212.9(1).

 Kentucky's garnishment statutes and law do conflict with the federal regulations in a number of key respects. First, under Kentucky law, the garnishee, the Bank in this instance, does not have standing to assert an exemption on behalf of the judgment debtor. *See* KRS 425.501(4); *Cent. Supply of Virginia, Inc.*, 787 S.W.2d

at 274. If the garnishee identifies money belonging to the judgment debtor, it must turn it over to the sheriff, the attorney for the judgment creditor or the clerk of court. *See* KRS 425.516; CR 69.02. The money remains frozen until the court determines whether any exemption asserted by the judgment debtor is valid. *See* CR 69.02(2) ("If the debtor files an objection within that period, the funds shall continue to be held until the court rules upon the objection.").

In contrast, the federal regulations require the garnishee financial institution to unilaterally determine if any of the funds are exempted by federal law. *See* 31 C.F.R. § 212. The garnishee financial institution is expressly prohibited from turning any exempt funds over and must ensure that the judgment debtor has free access to those funds. *See* 31 C.F.R. § 212.6. The bank's determination as to the amount of the exempt funds is conclusive. *See* 31 C.F.R. § 212.6(c).

 One of Cindy's chief complaints is that the Bank erred because it made a "unilateral decision . . . outside of the Court's involvement" that the funds it held were exempt from garnishment in violation of KRS 425.501(5). This argument is unpersuasive in light of the federal regulations. As demonstrated above, the federal regulations *required* the Bank to review the account, identify any exempt funds, and ensure that those funds were available to James irrespective of any contrary state laws. The federal statutes are clear that the Bank's review is to be performed without judicial oversight. Moreover, the Bank's determination is deemed to be conclusive. Therefore, we cannot agree that the Bank was required to involve the court in its initial exemption determination.

 The closer question is whether the Bank was required to disclose that James

maintained an account at the Bank, even though the funds in the account were exempt. The federal regulations require a financial institution to give notice to the account holder if:

(1) A benefit agency deposited a benefit payment into an account during the lookback period;

(2) The balance in the account on the date of account review was above zero dollars and the financial institution established a protected amount; and

(3) There are funds in the account in excess of the protected amount.

31 C.F.R. § 212.7(a).[9] However, the regulations do not require the financial institu-tion to provide any notice to the judgment creditor.[10]

While the federal regulations do not *require* notice to be given to either the court or the judgment creditor, nothing suggests that they prohibit it either. While the Bank relies on confidentiality as a basis for not disclosing the existence of the account, the legislative history of the regulations reveals that the federal agencies elected not to require notice to the judgment debtor based on financial, not privacy, concerns. *See* 76 FR[11] 9939–01 ("The Agencies believe it is inappropriate for the financial institution to bear the cost of notification to a creditor since the financial institution

---

**9.** In this case, the Bank determined that all the funds in James's account were protected. Therefore, the subsection was not met. As such, the Bank was not required to send the notice to James. Where required, the notice must inform the account holder of:

(1) The financial institution's receipt of an order against the account holder. (2) The date on which the order was served. (3) A succinct explanation of garnishment. (4) The financial institution's requirement under Federal regulation to ensure that account balances up to the protected amount specified in § 212.3 are protected and made available to the account holder if a benefit agency deposited a benefit payment into the account in the last two months. (5) The account subject to the order and the protected amount established by the financial institution. (6) The financial institution's requirement pursuant to State law to freeze other funds in the account to satisfy the order and the amount frozen, if applicable. (7) The amount of any garnishment fee charged to the account, consistent with § 212.6. (8) A list of the Federal benefit payments subject to this part, as identified in § 212.2(b). (9) The account holder's right to assert against the creditor that initiated the order a further garnishment exemption for amounts above the protected amount, by completing exemption claim forms, contacting the court of jurisdiction, or contacting the creditor, as customarily applicable for a given jurisdiction. (10) The account holder's right to consult an attorney or legal

aid service in asserting against the creditor that initiated the order a further garnishment exemption for amounts above the protected amount. (11) The name of the creditor, and, if contact information is included in the order, means of contacting the creditor.

31 C.F.R. § 212.7(b).

**10.** A review of the legislative history reveals that this was not a mere oversight. As part of the notice and comment process,

An organization representing collection attorneys requested that the final rule require financial institutions to provide notice not only to the account holder but also to the judgment creditor. They argued that since the rule does not require notice to the judgment creditor/garnishor, it violates the creditor's constitutional rights to notice that its State law rights are preempted. They contended that such a result is patently unfair to judgment creditors/garnishors that have a right to know the particulars as to why a financial institution did not freeze certain funds otherwise subject to collection under State law.

*Garnishment of Accounts Containing Federal Benefit Payments*, 76 FR 9939–01. Ultimately, the Treasury Department decided not to include such a requirement in its final Regulations on the basis that "the financial institution has no relationship with the creditor, in contrast to the account holder." *Id.*

**11.** Federal Register

has no relationship with the creditor, in contrast to the account holder.").

Not requiring the notice to be provided is a far different matter than prohibiting it. The federal regulations neither explicitly nor implicitly suggest that it is a violation of federal law for the financial institution to respond to a garnishment order with information as to the amount of funds it holds, even if the funds are exempt, so long as the financial institution does not impair the account holder's free access to those funds.

As observed by the circuit court, this means the Bank could have complied with KRS 425.511, which requires the garnishee to disclose "truly the sum owing by him to the defendant," without violating the federal regulations. Even if the Bank could not have complied with other parts of Kentucky's garnishment statutes, nothing about the disclosure itself runs afoul of the federal regulations. Since preemption is not complete, i.e, the state is entitled to act so long as its actions do not conflict with federal authority, the Bank was required to comply with KRS 425.511's truthful disclosure requirements. The Bank did not do so when it failed to disclose that it did hold money belonging to James.

The Bank asserts that it was placed in a Catch–22 because the AOC–150.1 form enclosed with the garnishment order did not lend itself to disclosure only. We agree with the Bank that the form does not provide a clear way for financial institutions to respond where only federally exempt funds are in the account at issue. This is likely because the form was last revised in May of 2004, well before the federal regulations at issue became law. However, the form is provided for the convenience of garnishees. Its use is not mandated by either the statutes or CR 69.02. It should go without saying that a financial institution should not use the AOC's form if doing so would cause it to submit incorrect or incomplete information in violation of Kentucky's garnishment statutes. The Bank could have prepared a separate affidavit or it could have included a notation on the AOC form in compliance with both KRS 425.511 and the federal regulations. Its failure to do so created confusion and resulted in a technical violation of KRS 425.511.

Moreover, as observed by the circuit court, the Bank's actions caused Cindy to believe that either James was lying or he did not have an account at the Bank. If the true facts had not been later revealed, Cindy could have been led into believing that no further garnishment would be fruitful because James had no accounts at the Bank. This, in turn, could have caused her to lose a source of potential recovery had James deposited non-exempt funds into the account at some point in the future.

### D. Cause of Action under 425.526

Since the Bank did not technically comply with KRS 425.511, Cindy was entitled to pursue a separate action against the Bank pursuant to KRS 425.526. Cindy argues that because it has been established that the Bank did not comply with KRS 425.511(1), she is automatically entitled to hold the Bank liable for the full amount of her underlying judgment against James plus her costs and attorney's fees. Like the circuit court, we disagree with Cindy's interpretation of KRS 425.526.

In pertinent part, KRS 425.526 provides: except that the plaintiff's affidavit shall state, in addition to the facts required to be stated in KRS 425.301(3), the *sum which the defendant owes to the plaintiff's debtor; and the plaintiff shall not be entitled to attach for or recover more than that sum and costs **nor more than**

*the amount of the plaintiff's claim against his debtor and costs.*

*Id.* (emphasis added).

The plain language is clear that the statute establishes both (1) that the judgment creditor shall not be able to recover more than the defendant, *i.e.*, the garnishee, owes to the plaintiff's debtor; and (2) that in no instance can the plaintiff obtain a judgment against the garnishee greater than his judgment against the original debtor. The statute plainly sets a ceiling, not a floor. It does not suggest in any way that the judgment creditor is automatically entitled to recover the full amount of its judgment from the garnishee irrespective of holdings of the garnishee in relation to the judgment debtor; in fact, it states precisely the opposite. *See Brewer v. Commonwealth*, 478 S.W.3d 363, 371 (Ky. 2015) ("When interpreting statutes, our utmost duty is to 'effectuate the intent of the legislature.' That intent is perhaps no better expressed than through the actual text of the statute, so we look first to the words chosen by the legislature—if they are clear, they are decisive.") (footnotes omitted).

Nonetheless, Cindy maintains that the statute was applied by two separate courts consistent with her argument that the Bank's failure to disclose James's account makes it liable for the entire amount of her judgment against James, $64,600. The first case Cindy relies on, *Holbrook v. Fyffe*, 164 Ky. 435, 175 S.W. 977 (1915), was decided by the Kentucky Court of Appeals, then the highest court in Commonwealth, over a century ago. In *Holbrook*, the defendant bank was served as garnishee with an order of attachment for $270 on a judgment debtor's account. While the judgment debtor had sufficient funds in his account at the time the garnishment order was served, the bank failed to freeze the account and instead paid out checks that had been issued on the account. The court found that the defendant bank had erroneously or negligently paid out the $270 subject to attachment and was therefore liable to the plaintiff for the $270, which happened to be the full amount of the plaintiff's judgment against the judgment debtor. *Id.* at 979.

The second case Cindy relies on is a case from the Sixth Circuit Court of Appeals, *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627 (6th Cir. 2000). In *McMahan*, the court found that the defendant bank was not complying with KRS 425.501(5), which mandates that "property be identified as of the moment that the garnishment order is presented, not merely as of close of business the previous day." The bank's noncompliance with KRS 425.501(5), coupled with the structure of the judgment debtor's accounts, caused the bank to represent in its responses to several garnishment orders that it held no funds belonging to the judgment debtor, when, in fact, the judgment debtor had over a hundred thousand dollars deposited with the bank. Citing only to *Holbrook*, the Sixth Circuit held that because the defendant bank had violated a garnishment order, it was liable to the plaintiff for the full amount of the judgment, despite the fact that the actual amount in the judgment debtor's account was less than the total amount to which the plaintiff was entitled.[12] *McMahan*, 206 F.3d at 632.

In finding *McMahan* and *Holbrook* inapplicable to the present case, the trial court found it paramount that both of

12. The plaintiff's judgment was for $185,477.15 plus interest. The plaintiff asserted that the total sum of the judgment debtor's accounts with the bank was $113,541.75. *See*

*McMahan & Co. v. Po Folks, Inc.*, No. 96-5237, 107 F.3d 871, 1997 WL 78497 (6th Cir. Feb. 24, 1997).

those cases involved banks that, in addition to violating garnishment orders, actually held funds that the plaintiff would have been able to garnish but for the banks' errors. Thus, the circuit court found that because the Bank did not actually possess any garnishable funds when it received Cindy's garnishment order, the rule of *McMahan* and *Holbrook* was inapplicable and, as such, Cindy was not entitled to receive the full amount of her judgment from the Bank.

As a primary matter, we are not bound by *McMahan*, a federal case applying state law. While we are free to adopt its reasoning, we are equally free to reject if we do not find its reasoning to be sound. The *McMahan* court relied on *Holbrook* without any accompanying analysis. Moreover, it failed to consider the plain language of KRS 425.526. Ultimately, we do not accept as correct the *McMahan* court's blanket statement that Kentucky law makes a garnishee strictly liable to the judgment creditor for the entire amount of the underlying judgment. Such a rule could work in patently unfair ways against the garnishee while resulting in an unjustified windfall to the judgment creditor. Moreover, there is nothing in KRS 425.426 that excuses the judgment creditor from proving actual damages as would be required as part of any other action. The statute establishes a ceiling on recovery, nothing more.

Our conclusion in this regard is supported by a case not cited by either of the parties, but which we find sufficiently on point to be worthy of discussion. In *Ferguson Enter., Inc. v. Main Supply, Inc.*, 868 S.W.2d 98, 99 (Ky. App. 1993), Ferguson obtained a judgment against Main Supply, Inc. in the amount of $34,631.18. To enforce this judgment, Ferguson served an order of garnishment on the Bank of Danville on July 24, 1991. On August 7, 1991,

the bank submitted an affidavit and answer indicating there were no funds available for the garnishment lien's attachment. Through additional correspondence, it was discovered on July 24, 1991 (the date the bank received the garnishment order), that Main Supply's account showed a balance of $13,206.87. Notwithstanding this balance, the bank indicated that it deemed a loan to Main Supply as being in default, thus entitling it to the account balance by reason of a security interest lien or setoff. Ultimately, it was determined that the bank's assessment was in error. As result of the bank's failure to properly respond to the order of garnishment, we held Ferguson was entitled to a judgment against the bank in the amount of "$13,206.87, representing the amount in the account at the time the garnishment lien attached on July 24, 1991." *Id.* at 101. Significant to the case before us now, the judgment Ferguson was awarded against the bank was $21,424.31 *less than* its judgment against Main Supply, the judgment debtor.

We hold that in order to prevail under KRS 425.426, the judgment creditor must establish that the garnishee's actions caused her to suffer actual damages. In most cases, those damages will be measured by the amount the garnishee failed to turn over or freeze and that the judgment creditor is able to establish she would have collected under the garnishment order, but for the garnishee's failure. The statute cannot be used to punish a garnishee for a mere technical violation that did not result in actual money or other property being wrongfully withheld from the judgment creditor.

Cindy cannot establish that she would have been able to recover any funds from James's account but for the Bank's action. In fact, she has conceded that all the funds in James's account were exempt when the Bank received her garnishment

order. Nevertheless, Cindy maintains that the Bank's actions in failing to disclose the existence of James's account caused her to expend more attorney's fees than necessary, including fees incurred in attempting to hold both James and the Bank in contempt. While KRS 425.426 allows a judgment debtor like Cindy to recover costs, it says nothing about attorney's fees. "As a general rule . . . in the absence of a statute or contract expressly providing therefor, attorneys' fees are not allowable as costs." *Bell v. Com., Cabinet for Health & Family Servs., Dep't for Cmty. Based Servs.*, 423 S.W.3d 742, 748 (Ky. 2014) (quoting *Dulworth & Burress Tobacco Warehouse Co. v. Burress*, 369 S.W.2d 129, 133 (Ky. 1963)). Since the statute does not expressly indicate that attorney's fees are recoverable, Cindy cannot hold the Bank liable for them. Since Cindy cannot establish that she suffered any cognizable damages, the circuit court properly granted summary judgment against her.

### E. State Law Claims

In the alternative, Cindy argues that even if the trial court was correct in dismissing her claim under KRS 425.426, it failed to consider that her complaint pleaded alternative state law claims for fraudulent misrepresentation and fraudulent omission. She maintains that the trial court's damages analysis is not applicable to these claims.

The trial court did not analyze Cindy's state law claims separately, apparently believing its damages analysis was equally applicable to those claims. We see no reason why the damages analysis would

not apply equally to Cindy's state law claims. Causation is a basic element of all tort-based actions and Cindy cannot establish that the Bank's actions actually caused her harm. Likewise, we do not believe that she can recover her attorney's fees in this instance where no statute would allow their recovery.

However, even if the damages analysis was not the same with respect to the tort claims, Cindy's claims would fail because they are based on statements the Bank made as part of the garnishment proceedings Cindy instituted.[13] Thus, the statements at issue were made "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding" *Rogers v. Luttrell*, 144 S.W.3d 841, 843–44 (Ky. App. 2004) (quoting *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1127 (6th Cir. 1990)). The judicial statements privilege precludes the use of such statements to sustain a cause of action. *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 184 (Ky. App. 2014). While the privilege does not outright bar an action, it renders it unsustainable if based exclusively on statements privileged under the law. *Id.* The judicial statements privilege applies with equal force to statements in pleadings filed in judicial proceedings. *See id.* (citing *Massengale v. Lester*, 403 S.W.2d 701 –02 (Ky. 1966)).

Pursuant to KRS 425.511 and CR 69.02(2), a response to a garnishment order is treated similarly to an answer. All the statements relied on by Cindy occurred as part of the Bank's response to her garnishment order.[14] And, her cause of

---

13. While we recognize that the trial court did not base its decision on this conclusion, we are not precluded from considering it because we are free "to affirm a lower court for any reason supported by the record." *McCloud v.*

*Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009).

14. When reviewed carefully, the emails do not show the existence of any false or misleading information in that no garnishable funds were

action is based on either the Bank's outright fraudulent statement in the order or its failure to fully comply with its statutory duties in answering the garnishment order. Since Cindy cannot rely on those statements, her common law claims against the bank are "unsustainable."

## IV. CONCLUSION

Based on the foregoing, the Pulaski Circuit Court's order granting the Bank's motion for summary judgment is affirmed.

STUMBO, J. CONCURS.

TAYLOR, J. CONCURS IN RESULT ONLY.

in James's account and he had no CDs with the Bank. While Cindy claims explicit false oral statements were made to her attorney, there is no affidavit from Mr. Hostettler to this effect in the record. While Mr. Hostettler

filed a brief arguing about the statements, he did so in his capacity as Cindy's attorney, not as a fact witness. The arguments of counsel in briefs are not evidence.